Johanna Phipps **HARRIS**

v.

The **UNITED STATES.**

No. 539–86C.

United States Claims Court.

Oct. 1, 1987.

Johanna Phipps Harris, pro se.

Stephen J. McHale, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## MEMORANDUM OPINION

LYDON, Senior Judge:

In this civilian pay case, plaintiff, proceeding *pro se,* challenges her removal from the Federal service and, in addition, seeks overtime compensation for the period prior to her removal.[1] Defendant has moved to dismiss plaintiff's complaint or, in the alternative has moved for summary judgment. Plaintiff has filed an opposition to these motions. Plaintiff's opposition brief is somewhat ambiguously captioned "Plaintiff's Motion To Deny Request For Dismissal Or Summary Judgment", but the substance of said opposition criticizes her removal from Federal service as based on "beratement, harassment and intimidation" and contends she is entitled to "just compensation" for her labors which she states

---

1. Plaintiff's complaint was filed on April 4, 1984 in the United States District Court For The District Of Maryland. By order dated March 14, 1986, the District Court transferred this case to this court noting that while the claims asserted in plaintiff's complaint may ultimately be dismissed by the Claims Court on any or all of the grounds raised in defense (jurisdiction—retaliatory discharge sounds in tort; statute of limitations bars overtime claim; and *res judicata* bars reinstatement claim), plaintiff should be given an opportunity to present her claims to the Claims Court.

"is much broader than the scope of the Fair Labor Relations Act intended."

Upon consideration of the submissions of the parties, and without oral argument, the court concludes that defendant's motions should be granted.

### Facts And Discussion

#### 1. The Removal Claim

Plaintiff was employed by the Department of the Army as a medical lab technician, Grade GS-7, at the Fort Ritchie Health Clinic in Maryland. On September 17, 1979, plaintiff was sent an "Advance Notice of Proposed Adverse Action—Removal", citing as reasons her failure to follow daily control procedures and her failure to obey orders from her supervisors on several occasions. This Notice set forth with specificity the details of each charge. Plaintiff responded to the charges set forth in the Notice on October 12, 1979, through the oral statements of the President of Local 1153 of the National Federation of Federal Employees and a legal intern, operating under the supervision of a licensed attorney, who were acting on behalf of plaintiff. These oral statements were recorded and transcribed and are part of the record in this case. The substance of her rebuttal, as presented at that time, was that she was so overburdened with her work load that she was unable to perform the daily control procedure.

By letter dated October 29, 1979, plaintiff's taped rebuttal was considered and addressed. Plaintiff was notified by said letter that the charges against her were supportable and the proposed action was justified based on the evidence presented. She was further notified that she would be removed from federal employment on November 2, 1979. She was advised of her right to appeal her removal to the Merit Systems Protection Board (MSPB).

Plaintiff appealed her removal to the MSPB on November 26, 1979, claiming that she did not perform the quality controls because she did not have time, that the failure to perform quality control tests was a pretext for her removal, that she was not insubordinate, that earlier disciplinary actions were improperly considered, that the decision was not supported by substantial evidence, that the agency failed to identify the critical elements of her performance standards in which her performance was unacceptable, and that the removal was in retaliation for other remedies pursued by plaintiff.

A hearing was held on February 5, 1980, before the Philadelphia Field Office of the MSPB and an initial decision by the Field Office was rendered on March 21, 1980, affirming the removal action. On May 19, 1980, plaintiff filed a petition for review of the Field Office decision, which ultimately was denied, making said decision the MSPB's final determination. Plaintiff appealed the MSPB's final decision to the United States Court of Appeals for the District of Columbia Circuit, which affirmed, without opinion, the board's decision on March 12, 1982. *Harris v. Merit Systems Protection Board*, 675 F.2d 1340 (D.C.Cir.1982).

▪ The removal action in this case commenced on September 17, 1979. As a result, it was governed by the Civil Service Reform Act of 1978, which was applicable to all such actions commenced subsequent to January 11, 1979, the effective date of said Act, 5 U.S.C. § 1101 (1982). Under the Federal Courts Improvement Act of 1982, the United States Court of Appeals for the Federal Circuit was given exclusive jurisdiction of appeals from a final order or decision of the MSPB. 28 U.S.C. § 1295 (1982). *See* 5 U.S.C. § 7703(a) and (b); *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 775, 105 S.Ct. 1620, 1625, 84 L.Ed.2d 674 (1985); *Rosano v. Department of the Navy*, 699 F.2d 1315, 1318 (Fed.Cir.1983); *Alvarez v. United States*, 9 Cl.Ct. 311, 312 (1985). Accordingly, this court is without jurisdiction to review the MSPB decision upholding plaintiff's removal.[2] The fact that the District Court transferred the case to this court does not confer jurisdiction on this court to consider plaintiff's removal claim.

---

**2.** In her opposition brief, plaintiff did not concern herself with the jurisdictional aspects of the case but instead concentrated on the merits of her removal.

The question remaining is whether this court should transfer the case to the Federal Circuit under 28 U.S.C. § 1631. Under 5 U.S.C. § 7703(b)(1), plaintiff was required to file a petition for review of the MSPB decision in the Federal Circuit within 30 days after the date plaintiff received notice of the final decision of the Board. The record in this case does not contain the date of final MSPB decision. It occurred sometime after June 20, 1980 (the date the agency submitted its response to plaintiff's petition for review of the initial Field Office decision) and March 12, 1982, the date the District of Columbia Circuit Court affirmed, without opinion, the MSPB decision. Plaintiff's complaint was filed in the District Court on April 2, 1984. Under the circumstances the 30 day period for filing an appeal with the Federal Circuit must be deemed to have expired. *See Monzo v. Department of Transportation*, 735 F.2d 1335, 1336 (Fed.Cir.1984). The 30–day period is statutory, mandatory and jurisdictional. *Id.* It cannot be evaded by events such as are described above. As a result, transfer of this case to the Federal Circuit would not be in the interests of justice. *See Dancy v. United States*, 229 Ct.Cl. 300, 308, 668 F.2d 1224, 1228 (1982); *Little River Lumber Co. v. United States*, 7 Cl.Ct. 492 (1985).[3]

### 2. *The Overtime Compensation Claim*

Plaintiff seeks to recover overtime compensation for the period May 1974—May 1979. It appears that plaintiff's overtime claim is based on actual overtime hours worked and also on her assertion that since she did the work of 2 or 3 or 4 technicians while only receiving the pay of one technician, she is entitled to be paid not on the basis of overtime hours she worked alone but on the basis of "just compensation" which meant that plaintiff should receive additional compensation for the other 2, 3 or 4 technicians as well.[4] This novel theory of overtime compensation is not supported by any statute or case law precedent that the court is aware of. Overtime compensation due a federal employee is governed by statute and not by "just and equitable" considerations.

On November 22, 1978, the National Federation of Federal Employees (NFFE) filed an overtime claim with the General Accounting Office (GAO) on plaintiff's behalf. The claim was based on the Fair Labor Standards Act (FLSA). The claim ostensibly was based on actual overtime hours worked by plaintiff. The claim period was from May 1, 1974 through January 1978. The GAO returned the claim to the Army with instructions to look into the matter.[5] The union, on plaintiff's behalf, then presented the overtime claim to the Office of Personnel Management (OPM). OPM, after obtaining information from the Army, concluded that plaintiff had worked a number of hours of overtime for which she had not been paid and that she was entitled to

---

3. Plaintiff argues, it would appear, that the actions of the Army (i.e., removal and failure to pay overtime) constituted a breach of contract. However, it is settled that federal employees are appointed pursuant to statute, not contract, and thus their rights are governed by statute, not contract. *See Kania v. United States*, 227 Ct.Cl. 458, 464–65, 650 F.2d 264, 267–68, *cert. denied*, 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981); *Shaw v. United States*, 226 Ct.Cl. 240, 250–51, 640 F.2d 1254, 1260 (1981). It is further established that compensation due a federal employee is also a matter of statute and not contract. *See Kania v. United States, supra.*

4. Plaintiff, in her amended complaint seeks overtime compensation from May 1978—May 1979 "even though no overtime hours were worked" during this period. She presumably seeks overtime compensation on the ground she

was doing the work, during regular duty hours, of 2, 3 or 4 technicians and thus should receive "just compensation" for such work.

5. When the Army investigated the overtime claim of plaintiff, it could not locate documentation to support the claim completely. The Army asked plaintiff, through her union representative, to provide specific times and dates in support of the claim instead of a generalized statement of the amount sought. The union representatives responded that it was the Army's duty to maintain such records and that plaintiff should not suffer because they failed to do so. The Army investigated the matter for 6 months. On March 10, 1980, as a result of these efforts, the Army cited a lack of witnesses, a lack of proper documentation and specific times and dates as reasons for only allowing 16 of the 1080 hours of overtime claimed by plaintiff.

overtime compensation under the FLSA. However, since there was no detailed record of the overtime performed, OPM directed the Army and plaintiff to get together and settle the overtime claim. Plaintiff and the Army were unable to reach any agreement. OPM thereafter considered the available materials and the positions of the parties and arrived at an overtime figure of $7,251.11. As a result, OPM directed the Army to pay plaintiff $7,275.11. (The Army had previously offered to pay plaintiff $4,839.27 (569 hours of overtime).) However, plaintiff informed the Army that she had no desire to negotiate any settlement at the figure suggested by OPM.[6] On March 21, 1981, plaintiff was advised by the Army that a check for $7,275.11 was available to be picked up by plaintiff in settlement of her overtime claim. Plaintiff refused to pick up said check. On April 9, 1981, the Army, after notifying OPM, closed its file on the matter.

It appears plaintiff filed for bankruptcy in 1982 and listed the OPM award ($7,275.11) as an asset. In November 1983, the trustee in Bankruptcy requested the Army to place the $7,275.11 with the trustee. The Army refused to do so on the grounds the overtime claim was barred by the FLSA statute of limitations.

Plaintiff claims that failure to pay her appropriate overtime compensation, what she terms "just compensation", constitutes a breach of contract. The fact of the matter, however, as indicated previously, is that plaintiff's overtime compensation is determined by statute, not by contract. Under the Fair Labor Standards Act, 29 U.S.C. § 207(a), it provides that overtime (work week longer than 40 hours) compensation shall be at a rate not less than one and one-half times the regular rate received by an employee. There is no statutory or regulatory basis for plaintiff to be paid for overtime work on the basis of "just compensation." Plaintiff is entitled to be paid for overtime work at the rate of one and one-half times her regular rate of pay where claim is made under 29 U.S.C. § 207(a), the FLSA. *Alexander v. United States,* 1 Cl.Ct. 653, 657–58 (1983).

■ Plaintiff and defendant both proceed on the basis that this claim is under the FLSA, i.e., 29 U.S.C. § 207(a). Accordingly, 28 U.S.C. § 2501 (1983), the 6–year statute of limitations, is not applicable. *See Beebe v. United States,* 226 Ct.Cl. 308, 640 F.2d 1283 (1981); *Hickman v. United States,* 10 Cl.Ct. 550 (1986). The statute of limitations was not at issue in *Agner v. United States,* 8 Cl.Ct. 635 (1985), *aff'd,* 795 F.2d 1017 (Fed.Cir.1986). Under the FLSA, *supra,* suits for overtime compensation must be brought within 2 years after the cause of action accrued or otherwise be barred, except in cases of willful violations, when the time limit is three years. 29 U.S.C. § 255(a). The FLSA statute of limitations applies to actions brought in this court, *Alexander v. United States, supra,* 1 Cl.Ct. at 659, as it was applied to actions brought in the predecessor Court of Claims, *Beebe v. United States, supra,* 226 Ct.Cl. at 323–24, 640 F.2d at 1285. It is clear that plaintiff's overtime claims are continuing claims and that a separate cause of action accrued each payday that the Army at Fort Ritchie failed to pay said overtime compensation. *Beebe v. United States, supra,* 226 Ct.Cl. at 324, 640 F.2d at 1293. It is further clear that pursuit of administrative relief does not toll the running of the statute of limitations. *Unexcelled Chemical Corp. v. United States,* 345 U.S. 59, 65–66, 73 S.Ct. 580, 583–84, 97 L.Ed. 821 (1953).

Plaintiff's complaint seeking overtime compensation was first filed in the Maryland District Court on April 4, 1984. Although the complaint was filed in this court on September 22, 1986, since it was transferred to this court from the District Court,

---

**6.** In her complaint, plaintiff does not set forth the amount of overtime compensation she seeks. Instead, she sets forth for three separate time periods her formula for computing overtime compensation. For example, for the period May 1974—May 1977, she seeks "4.5 years [of overtime] at the overtime rate or the equivalent of 6.75 years of straight pay at the then prevailing rate of G.S. 7/2, 7/3 and 7/4 pay. The record suggests that plaintiff's formula would result in an overtime claim in excess of $250,000 for the period May 1974—May 1979.

the filing date of the complaint for limitation purposes is April 4, 1984. *See F. Alderete General Contractors, Inc. v. United States,* 715 F.2d 1476 (Fed.Cir.1983).

■ Under the 2–year statute of limitations of the FLSA, plaintiff's claims are barred. As noted above, plaintiff's overtime claim covers the period May 1971— May 1979. However, plaintiff concedes she worked no overtime during the period May 1978—May 1979. Indeed, even if the Army's actions in denying overtime compensation are deemed willful, and the 3–year statute of limitations is applicable, plaintiff's overtime claims are still barred. Plaintiff has not alleged the FLSA violations were willful. *See Beebe v. United States, supra,* 226 Ct.Cl. at 324, 640 F.2d at 1293. As to "willfulness" generally in FLSA cases involving the statute of limitations *see Hickman v. United States,* 10 Cl.Ct. 550, 553–54 (1986). Parenthetically, the court does not find anything in the record which would suggest that the violation of the FLSA was willful under the circumstances of this case. It is not willful to refuse to pay overtime compensation for periods when no overtime work was performed. Nor is it willful to refuse to pay overtime compensation on the basis that one was doing the work of 2, 3 or 4 persons. The Army offered to pay what it believed was more than fair overtime compensation given the absence of documentation and other factors.

Plaintiff does not address the statute of limitations defense raised by defendant in her opposing brief. However, she does address this defense in her amended complaint. She claims that when she received the letter from OPM dated February 10, 1981, she was receiving psychiatric treatment for depression and panic and her affairs were being handled by her attorneys.[7] She has claimed she was admitted to a psychiatric hospital from February 14, 1983 through October 1983 for treatment of a massive depression with psychotic episodes and was again admitted to another psychiatric hospital from February 28, 1985 through March 11, 1985 and from March 19, 1985 through March 26, 1985 for treatment of recurring episodes. It was discovered during this later period of hospitalization that a new diagnosis of depression with schizophrenic tendency was ascribed to her, a condition that has been present in her since childhood. Two attorneys were handling both her bankruptcy action, which she commenced in 1982 and her overtime claim at the administrative level, which was concluded some time in March—April 1981. Plaintiff claims her attorneys failed to file a timely suit for overtime on her behalf; and since she was unable to comprehend anything relative to federal lawsuits and relied completely on her attorneys, she claims a "legal disability" dating back to February 10, 1981, when OPM advised her it determined that she was entitled to overtime compensation in the amount of $7,275.11 and that said determination was a final administrative decision on the matter under FLSA, and if plaintiff was not satisfied with the determination she was "free

---

7. Since plaintiff's overtime claim was in the hands of her attorneys, it would seem her mental condition would not toll the statute of limitations. The failure to file suit, under such circumstances, would not toll the statute of limitations but may have provided plaintiff with a basis for a malpractice claim against her attorneys. Plaintiff, in any event, has the burden of proving mental incapacity to qualify as suffering from a legal disability. *Goewey v. United States,* 222 Ct.Cl. 104, 112, 612 F.2d 539, 544 (1979). The law presumes sanity and competency. *Id.* Plaintiff's condition was diagnosed as depression with schizophrenic tendency and existed since childhood. She was hospitalized twice in 1983 and twice in 1985, yet she was able to draft a complaint for filing in the District Court in April 1984 when, she asserts, she concluded her attorneys were not going to do anything for her. The record indicates that her "legal disability" condition was not continuous. Further, she was not hospitalized during the critical 2– or 3–year period from May 1978—May 1981 when the FLSA statute of limitations ran out. Since she had the condition which generated these episodes since childhood, it is not unreasonable to assume that these episodes were minimal or non existent during the critical period. *See Goewey v. United States, supra,* 222 Ct.Cl. at 116–17, 612 F.2d at 545–46. It is not unreasonable to conclude that her failure to file suit within the limitation period of the FLSA was not due to "legal disability", i.e., mental incapacity, but was due to her reliance on her attorneys to file suit on her behalf.

to take the matter to the District Court." [8] Plaintiff does not cite to any provision in the FLSA which provides for tolling of the Act's statute of limitations, nor does she cite any case law in support of her tolling position.

Accepting plaintiff's claim of "legal disability" at face value, and accepting her statement that the disability goes back to February 10, 1981, the date of the OPM determination that she be paid $7,251.11, it is clear that her claims had accrued for limitation purposes and were thereafter barred before said date. Plaintiff performed no overtime work during the period May 1978—May 1979. She concedes this fact. Thus, her overtime claims accrued at the latest in April 1978. The limitation period of 2 years expired by May 1, 1980 which was before the legal disability began. Viewing her claim as accruing on February 10, 1981 for the $7,251.11, then the statute of limitations would have expired on February 10, 1983, before she was hospitalized the first time on February 14, 1983. Whichever way the matter is analyzed, plaintiff's contention that legal disability tolled the statute of limitations relative to her overtime claim must be denied.

### Conclusion

For reasons discussed above, defendant's motion to dismiss plaintiff's complaint is granted. The clerk is directed to enter judgment dismissing the complaint. No costs.

---

**8.** The Office of Personnel Management's (OPM) decision analyzed the overtime claim of plaintiff very carefully, noted shortcomings in the claim, lack of documentation, conflicts between agency's versions and plaintiff's, etc., and reached what appears to the court to be a fair and reasonable result under the circumstances. OPM also noted in its February 10, 1981 decision that plaintiff did not include any request for overtime compensation beyond February 11, 1978.