**Perry E. BLAIR, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 444–87C.**

United States Claims Court.

Nov. 15, 1988.

---

Joel W. Cantrick, Denver, Colo., for plaintiff.

Tamra Phipps, Washington, D.C., with whom were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, and Susan Burnett, Asst. Director, for defendant.

## OPINION

LYDON, Senior Judge:

Plaintiff, a former employee of the Corps of Engineers, Department of the Army (Corps), seeks to recover overtime compensation under the provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. (1982) and the Prevailing Rates Systems (PRS), 5 U.S.C. § 5341 et seq. (1982), covering the period September 1982 to September 17, 1986. Plaintiff's position is that since he worked, during the above period, from ten to thirteen hours per day for eight consecutive days, which were followed by six consecutive days off duty, he is entitled, under the FLSA, to overtime compensation for hours worked in excess of eight hours per day and forty hours per week. Plaintiff estimates that he is entitled to overtime compensation in the amount of $103,371.42 for overtime work performed during the above period. Plain-

tiff also seeks liquidated damages under 29 U.S.C. § 216(b) (1982) on the grounds that the Corps' failure to pay him overtime compensation was not based upon a reasonable belief that the FLSA was not violated. Plaintiff further seeks an award of attorney's fees and costs in maintaining his claim.

■ Defendant has moved to dismiss plaintiff's complaint on two grounds. Defendant's first contention is that a portion of plaintiff's claim is barred by the FLSA statute of limitations, 29 U.S.C. § 255(a) (1982). Defendant's second contention is that plaintiff's complaint fails to state a claim upon which relief can be granted by the court. In this regard, defendant argues that plaintiff's claims are not governed by the FLSA but rather are governed by the Federal Employees Flexible and Compressed Work Schedules Act (CWSA), 5 U.S.C. § 6120 et seq. as amended, 5 U.S.C. § 6120 (1986). Defendant claims that the CWSA controlled plaintiff's employment terms pertinent herein and specifically exempted plaintiff from the overtime requirements of the FLSA. Since defendant has attached documents in support of its second contention, defendant's motion is more properly one for summary judgment and is so treated by the court. (See RUSCC 12(b)). Finally, defendant contends that the complaint fails to allege facts sufficient to state a claim under the PRS provisions.

In his response, plaintiff concedes that a portion of his claim is barred by limitations, but otherwise opposes defendant's motion.

Upon consideration of the submissions of the parties, who have waived oral argument, the court concludes that defendant's motion should be granted.

## FACTS

During the period September 1982 to September 1986, plaintiff was employed by the Corps as a cook abroad seagoing hopper dredges. His duties generally consisted of planning, preparing and serving meals for the dredge crew. Plaintiff's prior service with the Corps ended on June 19, 1982, when he was removed because of a reduction-in-force. However, on September 10, 1982, plaintiff received a temporary appointment with the Corps as a cook abroad the dredge Yaquina. On September 26, 1982, his position was converted to assistant cook-steward. On February 21, 1983, plaintiff was reassigned as a cook to the dredge Biddle. Plaintiff's temporary appointment was extended twice, to May 1983. Plaintiff received a permanent appointment on June 19, 1983, and was assigned to the dredge Essayons as a cook. On August 30, 1983, plaintiff was detailed to a position as cook aboard the dredge Yaquina. On October 9, 1983, plaintiff was converted from "excepted service [employment] to permanent career-conditional status." On October 23, 1983, plaintiff was permanently assigned to the dredge Yaquina where he remained until his resignation from his position, due to family responsibilities, on September 17, 1986. Prior to his voluntary resignation, plaintiff, at his request, had been granted leave-without-pay from September 8, 1986 to December 4, 1986.

The CWSA, *supra,* which began with the 1978 Act, allowed agencies to utilize alternate work schedules (AWS) for a limited period of time. It was an experimental type of program.[1] This experimental program was extended by Congress as the years passed. Generally, the standard for

---

1. A congressional finding underscoring this experimental legislation stated, in pertinent part:

 Sec. 2. The Congress finds that new trends in the usage of four-day workweeks, flexible work hours, and other variations in workday and workweek schedules in the private sector appear to show sufficient promise to warrant carefully designed, controlled, evaluated experimentation by Federal agencies to determine whether and in what situations such varied work schedules can be successfully used by Federal agencies on a permanent basis. The Congress also finds that there should be sufficient flexibility in the work schedules of Flexible employees to allow such employees to meet the obligations of their faith.

 *See* 5 U.S.C. § 6101 (1982), Historical and Revision Notes (1976) Federal Employees Flexible and Compressed Work Schedules Act of 1978 (CWSA of 1978), Pub.L. 95–390, 95 Stat. 755 (1978).

federal employment over the years was an eight-hour day, forty-hour workweek with overtime compensation usually available to employees if those work norms were exceeded. The AWS experiment was a deviation from these norms.

Under the Federal Employees Flexible and Compressed Work Schedules Act of 1982 (CWSA of 1982), Pub.L. 97–221, 96 Stat. 227 (1982), the AWS experimental program was continued. On January 10, 1983, the Portland, Oregon District of the Corps issued a personnel bulletin permitting AWSs, under authority of the CWSA of 1982, for all dredge crew personnel.[2] The governing statute, 5 U.S.C. § 6101, provided that unit employees would not be forced to work under an AWS unless a majority of said employees agreed to be so included. A majority of the galley crews, was "enthusiastic" in its desire to work under an AWS. This AWS provided for a ten-hour, eight-day compressed work schedule for the Portland Oregon District of the Corps for all dredge crew personnel.[3] Plaintiff worked for the Portland Oregon District of the Corps at all times material herein.

Plaintiff, as a member of the crew of the dredge Yaquina, worked under a compressed or AWS from August 30, 1983 to September 17, 1986, when he resigned. Plaintiff, in his complaint, alleges he worked under the AWS from September 1982. Defendant avers that plaintiff began such a work schedule on August 30, 1983. Under this work schedule plaintiff worked eight ten-hour days, followed by six days

off from work. This work schedule often was referred to as the "8/6".

Plaintiff's payroll records for the period July 27, 1984 to September 1986, attached to defendant's motion, show that he worked eight ten-hour days (7:00 a.m.— 6:00 p.m.), generally from Thursday of one week through Thursday of the following week, and then was off work for six straight days.[4] The materials further disclose that he received overtime compensation for days on which he worked more than ten hours. The materials also disclose he received premium pay for the Sundays and holidays he worked.

In his complaint, which is rather cryptic and brief on the matter, plaintiff alleges that "... from time to time, he was required to work in excess of ten hours per day, sometimes up to thirteen hours per day. Under that work schedule [alternate or compressed], plaintiff was required to work in excess of eight hours per day and in excess of forty hours per week. At all times material to this complaint, however, he was compensated at straight time rates rather than overtime rates for the hours in excess of eight per day and forty per week."

## DISCUSSION

### A. *Statute of Limitations*

 Plaintiff, in his complaint, seeks to recover overtime compensation under 29 U.S.C. § 207(a) (1982) of the FLSA. Under

---

**2.** As indicated above, plaintiff began work as a cook on the dredge Yaquina on September 10, 1982 and continued to work on the Yaquina and other dredges until August 30, 1983, at which time *plaintiff began to work under the AWS.* Presumably, during the period September 10, 1982 to August 29, 1983, plaintiff worked under the standard eight-hour day and 40–hour week and was compensated for overtime worked in excess of these standard work units. Plaintiff's complaint only describes an AWS under the CWSA in setting forth the factual basis for his claim. Plaintiff does not seek in his complaint overtime compensation for standard eight-hour day and 40–hour work weeks.

**3.** Under Section 201 of the CWSA of 1982, the term "compressed work schedule" means "(1)

... (A) in the case of a full-time employee, an 80–hour biweekly basic work requirement which is scheduled for less than 10 work days ...; and (2) the term 'overtime hours' means any hours in excess of those specified hours which constitute the compressed schedule." 5 U.S.C. § 6101 note.

**4.** Defendant did not attach payroll records for periods prior to July 27, 1984, on the ground any overtime claims for such periods were barred by the applicable three-year statute of limitations, assuming, arguendo, that the Corps was guilty of a willful violation of the FLSA in not paying the claimed overtime compensation to plaintiff. Defendant strenuously argues, however, there was no such willful violation.

this Act, suits for overtime compensation must be brought within two years after the cause of action occurred or otherwise be barred, except in cases of willful violation of the FLSA by an agency when the time limit for suit is three years. 29 U.S.C. § 255(a).[5] Plaintiff's complaint alleges "that the Corps' failure to pay him overtime compensation was not based upon a reasonable belief that the FLSA was not violated." In view of the court's disposition of this litigation on other grounds, it is not necessary, at this time, to make a conclusive determination on the "willfulness" issue as to the CWSA claim (to be distinguished from the FLSA claim).[6]

In any event, the court need not concern itself with the question of "willfulness" for plaintiff's FLSA claim since that portion of his claim is barred whether the two-year or three-year limitation period is applied, as will be discussed, *infra.*

Defendant's position is that plaintiff's FLSA overtime claim covers the period prior to August 30, 1983, when plaintiff began working under the alternate (compressed) work schedule (CWSA claim). Plaintiff's complaint was filed in this court on July 27, 1987. Under the two-year statute of limitations, plaintiff's overtime claims, based on the FLSA overtime provisions, for the period prior to July 27, 1985 are barred. Under the three-year statute of limitations,

such claims are barred for the period prior to July 27, 1984. Plaintiff's FLSA overtime claims are prior to either of these two dates.

As a result, that portion of plaintiff's complaint asserting claims for overtime compensation under section 7(a) of the FLSA covering the period September 1982 to August 29, 1983, is barred by the FLSA statute of limitations. 29 U.S.C. § 255(a); *Harris v. United States*, 13 Cl.Ct. 363, 366–367 (1987).

As indicated earlier, plaintiff concedes that any claims he may have prior to July 27, 1984, whether viewed as a FLSA overtime claim or as a CWSA overtime claim, are barred by limitations.

**B.** *Overtime Claims Under the Alternate (Compressed) Work Schedule*

Plaintiff believes that all his overtime compensation claims are governed by the FLSA. *See* 29 U.S.C. § 207. However, on July 23, 1982, Public Law 97–221, the CWSA of 1982, *supra*,[7] 5 U.S.C. § 6120 et seq., was enacted. In pertinent part this Act provided that:

Notwithstanding section 6101 of this title [mandating a basic five-day, eight-hour-per day, forty-hour work week], each agency may establish programs which use a 4–day work week or other com-

---

**5.** Overtime claims are continuing claims and an overtime claim accrues, and constitutes a separate cause of action, at the end of each pay period that the Corps failed to pay the claimed overtime. *Beebe v. United States*, 226 Ct.Cl. 308, 324, 640 F.2d 1283, 1293 (1981); *Harris v. United States*, 13 Cl.Ct. 363, 366 (1987).

**6.** Plaintiff, in its complaint, does not plead that the Corps' failure to pay him overtime was "willful". Plaintiff argues he need not plead "willfulness". This is not a valid argument. *See Schroeder v. Dayton–Hudson Corp.*, 448 F.Supp. 910, 914 (E.D.Mich.1978); *Beebe v. United States*, 226 Ct.Cl. at 324, 640 F.2d at 1293. Plaintiff has not moved to amend his complaint to assert "willfulness" on the part of the Corps. Had it been pleaded it may well have been a fact issue requiring trial. Plaintiff also attempts to equate "not based upon a reasonable belief" with "willfulness". As to the standard for determining "willfulness", *see Hickman v. United States*, 10 Cl.Ct. 550, 553–554 (1986). On the

basis of the facts presently before the court, it cannot be said that the Corps' action in denying overtime pay as requested by plaintiff was "willful" since there was, as evident herein, a legal dispute about whether or not plaintiff was governed by the CWSA or the FLSA. *See Cook v. United States*, 855 F.2d 848 (Fed.Cir.1988).

**7.** The effect of passage of the CWSA of 1982 was to give continued authorization for federal agencies to use flexible and compressed work schedules. *See* S.REP. No. 365, 97th Cong., 2d Sess. 1, *reprinted in* 1982 U.S.CODE CONG. & AD-MIN.NEWS 565. *See also* 5 U.S.C. § 6101 note (Supp. III 1985) (repealing the 1982 Act's termination provision). These programs were first established on an experimental three-year basis by Public Law 95–390, the CWSA, enacted September 29, 1978. *See* 5 U.S.C. § 6101 note (Supp. II 1978). *See also* H.R.REP. No. 912, 95th Cong., 2d Sess. *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 1894.

pressed schedule....[8]

\* \* \* \* \* \*

The purpose of the CWSA provisions and their effect on the overtime provisions, inter alia, of the FLSA, is clear from the legislative history to the CWSA of 1978, *supra.* See H.R.REP. No. 912, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 1894.

> The basic purpose of [the CWSA] is to suspend, temporarily for 3 years, during hours of flexible and compressed work schedules, certain provisions of law, such as those requiring overtime pay for work in excess of 8 hours a day or 40 hours a week in order to permit a 3-year controlled experiment in the use of flexible and compressed work schedules for employees of the executive branch of the U.S. Government....

*See id.* at 2, *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS at 1895.

It is clear from the House Report that the established overtime provisions, including section 7 of the FLSA (29 U.S.C. § 207), were seen as "represent[ing] the primary impediment to the introduction of compressed schedules in the Federal Government." H.R.REP. No. 912, 95th Cong, 2d Sess. at 20, *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS at 1912. *See also id.* at 28, *reprinted* at 1920 (Statement of Allan K. Campbell, Chairman of Civil Service Commission) (Federal Government should be able to test compressed work schedules without incurring additional costs).

■ Moreover, these compressed schedules have not abolished overtime rights, but have provided alternative means for determining entitlement to such rights, consistent with a compressed work schedule. *See* H.R.REP. No. 912, 95th Cong., 2d Sess. at 3, 20, *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS at 1896, 1912–1913. *See also* S.REP. No. 365, 97th

Cong., 2d Sess. 13, *reprinted in* 1982 U.S. CODE CONG. & ADMIN.NEWS 565, 575; 5 U.S.C. § 6128(a), (b) (1982).

■ It is the prerogative of Congress to establish working conditions, for federal employees which includes work schedules, (straight time and overtime) and pay relative thereto. *See Anderson v. United States,* 138 Ct.Cl. 192, 195, 150 F.Supp. 881, 883 (1957), *cert. denied* 355 U.S. 822, 78 S.Ct. 31, 2 L.Ed.2d 37 (1957). *See Bean v. United States,* 146 Ct.Cl. 267, 175 F.Supp. 166 (1959) (increase in tour of duty from sixty to seventy hours contemplated by Congress when premium pay Act passed which changed manner in which federal civilian firefighters were compensated). As in the *Bean* case, Congress intended to change the plaintiff's hours of work and the manner of compensation therefore. These changes are legislative and executive functions, and thus are not matters subject to judicial scrutiny. The facts in the case at bar must be examined in the context provided by this Congressional prerogative and the legislative history to the CWSA.

■ Plaintiff commenced work under the compressed or AWS on August 30, 1983. He worked under this schedule until his resignation in September 1986. The statute authorizing the AWS makes it clear that overtime under such a schedule means "any hours in excess of those specified hours which constitute the compressed schedule." 5 U.S.C. § 6121(7) (1982). In plaintiff's case, the specified hours in his compressed or AWS were eight ten-hour days in an eighty-hour, biweekly work requirement schedule. Thus, under plaintiff's work schedule from August 30, 1983, until his resignation in September 1986, overtime compensation is available to plaintiff, under the governing statute, only for hours worked in excess of ten hours per

---

**8.** Defendant states that plaintiff's employment under the CWSA claims was exempted from the requirements of the FLSA and any other law related to premium pay for overtime work, citing 5 U.S.C. § 6127(a) (1982). Section 6128(a) provides in pertinent part: "The provisions of

sections 5542(a), 5544(a), and 5550(2) of [title 5], section 4107(e)(5) of title 38, section 7 of the Fair Labor Standards Act (29 U.S.C. 207), or any other law, which relate to premium pay for overtime work, shall not apply to the hours which constitute a compressed schedule."

day or eighty hours per biweekly work requirement.[9]

Plaintiff seeks overtime compensation, while working under the compressed or AWS for all hours worked in excess of eight hours per day and forty hours per week. Under the statute authorizing the compressed or AWS only hours in excess of ten hours per day are considered overtime hours for compensation purposes. The FLSA provisions regarding overtime compensation for hours worked in excess of eight hours per day and forty hours per week are not applicable to employees who work under the compressed or AWS. 5 U.S.C. 6128(a). Accordingly, plaintiff's claim for overtime compensation for hours worked in excess of eight hours per day and forty per week while he worked under the compressed or AWS must be denied.

Plaintiff's opposition to defendant's motion centers on his contention that the CWSA Act did not govern his employment during the claim period July 27, 1984 (assuming arguendo "willfulness") to September 17, 1986. Plaintiff does not challenge defendant's position that the CWSA, if applicable, precludes the payment of overtime as claimed by plaintiff, nor could he present such a challenge in light of the clear language of the statute, 5 U.S.C. 6121(7). Plaintiff's position is that the CWSA may not be applicable to plaintiff's employment because defendant may not have "properly implemented a compressed work schedule to plaintiff's employment" (Plaintiff's Brief, p. 4).

Plaintiff sees this as a factual matter not subject to a motion to dismiss for failure to state a claim. Plaintiff recognizes, however, that material attached to such a motion in support thereof can be considered in the sound discretion of the court in ruling on such a motion. Indeed, the Rules of this court so provide. *See* RUSCC 12(b).

Defendant attached as appendices to its motion to dismiss rather extensive materials [10] which established rather clearly that the CWSA governed plaintiff's employment, and had done so for some four years before plaintiff filed suit in this court. Plaintiff had a reasonable opportunity to present any and all materials pertinent to the matter at issue. Plaintiff did not append any material to its opposition brief, choosing instead to rely on suggestions by counsel that trial might disclose that defendant improperly implemented a compressed work schedule as to plaintiff's employment. Plaintiff offers nothing more than this.

Plaintiff has been given a fair opportunity to litigate this matter. He is not entitled to more on the basis of his opposition brief. Defendant's motion should not be denied "on the mere assertions of counsel or conclusionary pleading that genuine issues of fact exists, which is the case here, nor should a motion be denied merely to satisfy a litigant's speculative hope of finding some evidence that might serve to save [his] complaint from dismissal." *See Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624 at 626, 627 (Fed.Cir.1984). *Singleton v. United States,* 6 Cl.Ct. 156, 168 (1984). As stated in *Barmag Barmer Mas-*

---

**9.** As to the validity of an administrative work period (other than a five-day, 40–hour work week) designated in advance by an agency, *see Sanford v. Weinberger,* 752 F.2d 636, 638 (Fed. Cir.1985).

**10.** These materials include the affidavit of the Chief of the Navigation Branch Operations Division of the Corps in Portland, Oregon, who was responsible for all manpower staffing requirements in dredging the coastal ports and waterways in Oregon. He clearly showed, in his affidavit, that the CWSA governed the employment for all crew personnel for the dredge Yaquina from 1983 to September 1986. Plaintiff's efforts to discredit this affidavit are most unpersuasive. As indicated previously, plaintiff was

employed as a cook aboard the Yaquina from 1983 to September 1986. These materials also included the affidavit of the Chief of the Finance and Accounting Center of the Corp's Portland District and plaintiff's payroll records from July 27, 1984 to September 1986 which established that the CWSA governed the employment of plaintiff since he worked a compressed or AWS during this entire period. Other materials appended to defendant's brief served to corroborate the fact that the CWSA governed plaintiff's employment at all times material herein. There is no hint, suggestion or inference to be drawn from these materials that the Corps improperly implemented the CWSA as to plaintiff's employment milieu.

*chinenfabrik A.G. v. Murata Machine, Ltd.*, 731 F.2d 831, 836 (Fed.Cir.1984):

> In countering a motion for summary judgment, more is required than mere assertions of counsel. The non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial.

Plaintiff has not offered any persuasive reason why these materials should not be considered since these materials are deemed relevant and material to the issue in this case.

Plaintiff questions the adequacy of the materials appended to defendant's brief. Upon careful consideration of plaintiff's assertions in this regard, the court finds them most unpersuasive.[11]

As indicated previously, defendant's motion to dismiss for failure to state a claim (RUSCC 12(b)(4)) can properly be treated as a motion for summary judgment under RUSCC 12(b) under the circumstances of this case. *See Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) (FRCP 12(b)(6) same as RUSCC 12(b)(4)); *Shaw v. United States*, 8 Cl.Ct. 796, 797 (1985). The allegations of fact of plaintiff's complaint are taken as true. The legal conclusions in his complaint are, of course, not binding on the court. There is no genuine issue of material fact in

dispute even with the allegations of the complaint being construed in a light most favorable to plaintiff. *White Mountain Apache Tribe of Arizona v. United States*, 8 Cl.Ct. 677, 681 (1985). Plaintiff had ample opportunity prior to filing its response, to obtain discovery and to litigate the issue of implementation of the CWSA to plaintiff's employment with the Corps. Plaintiff's response to defendant's motion, which was supported by affidavits and other pertinent documentation, was devoid of any documentary support.

In *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1562 (Fed.Cir.1987) it was stated in pertinent part:

> Where a movant has supported its motion with affidavits or other evidence which, unopposed, would establish its right to judgment, the non-movant may not rest upon general denials in its pleadings or otherwise, but must proffer countering evidence sufficient to create a genuine factual dispute. A dispute is *genuine* only if, on the entirety of the record, a reasonable jury could resolve a factual matter in favor of the non-movant.

*See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Under the circumstances of this case, defendant's motion must be granted. *See* RUSCC 56(b).

Plaintiff also alleges that "from time to time he was required to work in excess of

---

**11.** Plaintiff looks at one document appended to defendant's brief in isolation. However, when the totality of the appended materials is examined one finds a history of the Portland District's consideration of whether the CWSA would be workable for District work situations, its testing of the AWSs in different work situations, e.g., employees assigned to dredges, and finally its implementation and use for employees assigned to dredges. Plaintiff seizes upon a 1983 personnel bulletin wherein the Portland District of the Corps gave initial consideration to implementation of the CWSA and, recognizing that AWSs were not suited for all work situations, indicated that some employees may be excluded, for one reason or another, from CWSA coverage. Plaintiff feels this 1983 personnel bulletin is inadequate on its face to establish applicability of CWSA to plaintiff's employment. However, when placed in proper perspective, the 1983 bulletin is part of the his-

tory of the Portland District's adoption of the CWSA which ultimately resulted in the employees of dredges, which included plaintiff, being governed by the CWSA. Plaintiff criticizes the Beckly affidavit, with insignificant snipes, but fails to offer a counter affidavit. Plaintiff also ignores the payroll records of plaintiff which established beyond cavil that plaintiff worked, at all times material herein, an AWS, i.e., an "8/6" work schedule, which is the embodiment of the application of the CWSA to plaintiff's employment. Finally, plaintiff notes he was a member of a collective bargaining unit under 5 U.S.C. 6130 and suggests that maybe plaintiff's compressed work schedule was inconsistent with said collective bargain agreement. Such a suggestion is insufficient to defeat defendant's motion. If there was such an inconsistency, plaintiff would have or should have set it forth in its opposition brief with supporting documentations.

ten hours per day, sometimes up to thirteen hours per day." (Complaint, para. 4). The payroll records of plaintiff, appended to defendant's motion, indicate that from time to time plaintiff was required to work in excess of ten hours per day but these records indicate plaintiff received overtime compensation on such occasions for all hours in excess of ten hours per day. At times, these records indicate that plaintiff sometimes worked three or four hours in excess of the ten hour day but received appropriate overtime compensation for said overtime work. Thus, plaintiff's payroll records support the view that plaintiff's complaint fails to state a claim on which relief can be granted.

Without more, plaintiff's overtime claim for the period August 30, 1983 to September 1986 lacks merit.

There is no basis, in fact or law, in the complaint, or in the materials presented to the court, supportive of plaintiff's bare allegation concerning violations of the PRS provision of the United States Code, 5 U.S.C. § 5341 et seq. Indeed, plaintiff does not respond in his opposition brief to defendant's motion stating that plaintiff's complaint fails to allege facts sufficient to state a claim under the PRS provision.

### CONCLUSION

Defendant's motion to dismiss the complaint under RUSCC 12(b)(4), for failure to state a claim upon which relief can be granted, is treated, as provided by RUSCC 12(b), as a motion for summary judgment under RUSCC 56 and is granted. The clerk is directed to enter judgment dismissing plaintiff's complaint. No costs.

