E.L. HENDRIX, et al., Plaintiffs,

v.

The CITY OF YAZOO CITY, MISSISSIPPI, Defendant.

Civ. A. No. J89-0272(L).

United States District Court, S.D. Mississippi, Jackson Division.

Oct. 4, 1989.

Elizabeth L. Gilchrist, Jackson, Miss., for plaintiffs.

Gary E. Friedman, Miller, Milam & Moeller, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Plaintiffs, firefighters employed by defendant, Yazoo City, Mississippi, brought this action alleging violations of Section 8 of the 1985 Amendments to the Fair Labor Standards Act (FLSA). Presently before the court is defendant's motion to dismiss. Plaintiffs have responded to the motion, and the court has considered the memoranda submitted by the parties in ruling on the motion.

Section 7 of the FLSA, 29 U.S.C. § 207 (1965 & Supp.1989), establishes minimum wages and overtime to be paid by certain employers. In *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the Supreme Court, overruling *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), held that the FLSA applies to state and local governments. In response to this change in the law, Congress passed the 1985 Amendments to the FLSA, Pub.L. No. 99–150, 99 Stat. 791,[1] one purpose of which was to ease the financial stress on local governments by delaying for one year, until April 15, 1986, the applicability of the FLSA. *See* S.Rep. No. 357, 99th Cong., 1st Sess. 7–8, *reprinted in* 1985 U.S.Code Cong. & Admin.News 651, 655–56. The Amendments also prohibited discrimination by state and local governments against employees seeking the protection of the minimum wage and overtime provisions of the Act:

> A public agency which is a State, political subdivision of a State, or an interstate governmental agency and which discriminates or has discriminated against an employee with respect to the employee's wages or other terms or conditions of employment because on or after February 19, 1985, the employee asserted coverage under Section 7 ... shall be held to have violated Section 15(a)(3) of such Act. ...

29 U.S.C. § 215 note (Supp.1989) (hereinafter referred to as Section 8). Section 15(a)(3) provides that it shall be unlawful

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3).

The facts as alleged by plaintiffs and taken as true for the purposes of this motion indicate that after the *Garcia* decision but before April 15, 1986, plaintiffs and their representatives inquired of defendant as to how it would meet the requirements of the Act. In response, defendant unilaterally reduced plaintiffs' base wage rates, effective April 15, 1986, so as to avoid the increase in labor costs that compliance with the Act's overtime provisions would have caused. Three years and one month later, in May 1989, plaintiffs filed this suit against defendant, alleging that in reducing plaintiffs' base wage rates defendant had discriminated against them in violation of Section 8.[2]

---

1. The 1985 Amendments amended 29 U.S.C. §§ 203, 207 and 211 and enacted provisions set out as notes under §§ 203, 207, 215 and 216.

2. Legislative history confirms that Section 8 was intended to prohibit such a reduction:

   The provision is ... intended to apply where an employer's response to the assertion of FLSA coverage is to reduce wages or other monetary benefits for an entire unit of employees.

   ....

   A unilateral reduction of regular pay or fringe benefits that is intended to nullify this legislative application of overtime compensation to state and local government employees is unlawful.

   H.R.Conf.Rep. No. 357, 99th Cong., 1st Sess. 8–9, *reprinted in* 1985 U.S.Code Cong. & Admin. News 668, 670; *see also Blanton v. City of Murfreesboro*, 856 F.2d 731 (6th Cir.1988); *Hill v. City of Greenville, Tex.*, 696 F.Supp. 1123 (N.D.

Defendant has moved to dismiss, contending that plaintiffs' suit was not filed within the limitations period provided by statute. The statute of limitations for claims brought under the FLSA for non-willful violations is two years from the date the cause of action accrues and three years for willful violations. 29 U.S.C. § 255(a). Defendant argues that plaintiffs' claims accrued on the date on which the wage reduction became effective, and therefore plaintiffs' suit, which was filed three years and one month later, is untimely. Plaintiffs, on the other hand, argue that defendant's acts constitute a continuing violation such that as long as the reduced base wage rates remain in effect, a new cause of action accrues each time defendant pays plaintiffs the lowered wage.

The judicially-created doctrine of continuing violations, although most frequently applied in discrimination cases, has been used in cases involving a variety of statutory violations. The doctrine has at least two different applications. One has the effect of allowing recovery for violations which occurred either before the relevant statute was passed or outside of the applicable limitations period, if those violations are so closely related to violations occurring after the effective date of the statute or within the limitations period that they may be said to constitute a single, continuing violation. Because at least a portion of the continuing violation occurs within the applicable period, a plaintiff may recover for the continuing violation in its entirety. *See, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) (complaint timely as to all five incidents of racial steering in violation of Fair Housing Act where filed within 180 days of last four incidents); *Glass v. Petro–Tex Chemical Corp.,* 757 F.2d 1554 (5th Cir.1985) (policy against promoting women constituted continuing violation of Title VII such that charge filed within 180 days of last failure to promote was timely as to other such failures); *Berry v. Board of Supervisors,* 715 F.2d 971 (5th Cir.1983) (where some discriminatory acts occurred

Tex.1988); *Alexander v. City of Plainview,* 694

within 180 days before filing of EEOC complaint, plaintiff could recover for all acts), *cert. denied,* 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986); *New Port Largo, Inc. v. Monroe County,* 706 F.Supp. 1507 (S.D. Fla.1988) (statute of limitations for Section 1983 and 1985 claims tolled where actions occurring outside of statutory period part of same "continuing wrong" as later violations); *Ferner v. Village of Sheffield,* 656 F.Supp. 1017 (N.D.Ohio 1987) (where some acts in violation of plaintiff's first amendment rights occurred within limitations period, plaintiff could recover for all).

Another application of the doctrine, and the one most relevant to the case *sub judice,* involves a determination that the applicable statute of limitations begins to run at a point in time subsequent to the initial violation. Typically in such a case, the plaintiff will have filed his complaint outside of the limitations period as calculated from the date of the first violation. Nevertheless, if he can demonstrate that defendant's subsequent acts constitute a continuing violation, the complaint will be considered timely, at least with regard to those acts occurring within the limitations period. *See, e.g., Jackson v. Galan,* 868 F.2d 165 (5th Cir.1989) (repeated garnishment of plaintiff's wages constituted continuing violation of due process rights).

■■■ The critical difference between these two applications of the doctrine is that in the former the issue is whether there is a particular relationship among defendant's separate violations, whereas in the latter application the real question is whether defendant's subsequent acts constitute any violation at all. A review of cases involving this latter type of continuing violation indicates that this question is not easily answered, as the distinction between a one-time, discrete violation that merely continues to adversely affect the plaintiff and a series of continuing violations is a difficult one. For example, in cases of sex or race discrimination involving disparate wages, the established rule is that a new cause of action accrues with each payday on which the disparate wages

F.Supp. 221 (N.D.Tex.1988).

are paid. *See, e.g., Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (race discrimination under Title VII); *Jenkins v. Home Ins. Co.,* 635 F.2d 310 (4th Cir.1980) (sex discrimination under Title VII and Equal Pay Act); *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041 (5th Cir.1973) (sex discrimination under Equal Pay Act); *Ottaviani v. State University of New York at New Paltz,* 679 F.Supp. 288 (S.D. N.Y.1988) (sex discrimination under Equal Pay Act). Similarly, the failure of an employer to pay minimum wages or overtime in accordance with Section 7 of the FSLA constitutes a continuing violation, such that a new cause of action accrues with each paycheck. *Halferty v. Pulse Drug Co.,* 821 F.2d 261 (5th Cir.1987); *Beebe v. United States,* 226 Ct.Cl. 308, 640 F.2d 1283 (1981); *Blair v. United States,* 15 Cl.Ct. 763 (1988); *Harris v. United States,* 13 Cl.Ct. 363 (1987).

In other situations courts have characterized a defendant's subsequent acts as merely giving effect to past violations, rather than constituting present violations. For example, in *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), a flight attendant was discharged from employment for discriminatory reasons. Subsequently, she sought reinstatement several times, but was unsuccessful. However, approximately four years after discharging her, the airline rehired her. Because it considered her a new employee, the airline refused to give her seniority credit for her past service. She then brought suit, challenging the company's refusal to credit her with the past employment time. Plaintiff conceded that her suit was not timely filed with regard to the discharge. The issue before the Court, therefore, was whether a new cause of action had accrued at the time the defendant rehired the plaintiff and applied the seniority system to her. The Court agreed with the plaintiff that the airline's seniority system, although facially nondiscriminatory, gave present effect to a past illegal act and perpetuated the consequences of discrimination. The Court observed, however, that the "critical question" in such a case is "whether any present *violation* exists."

*Id.* at 558, 97 S.Ct. at 1889. The conclusion of the Court was that the failure to give the plaintiff seniority credit for her past service with the company did not constitute a present violation of Title VII:

> The statute does not foreclose attacks on the current operation of seniority systems which are subject to challenge as discriminatory. But such a challenge to a neutral system may not be predicated on the mere fact that a past event which has no present legal significance has affected the calculation of seniority credit, even if the past event might at one time have justified a valid claim against the employer.

*Id.* at 560, 97 S.Ct. at 1890.

Recently, the Supreme Court indicated one factor which distinguishes present violations from the mere effects of past violations. In *Lorance v. AT & T Technologies, Inc.,* — U.S. —, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), a Title VII case, three women brought an action challenging their employer's new seniority system for workers in the position of tester. In the past, the employer had used a system for all workers, including testers, based on the number of years of plant-wide service. The new system, created by a contractual modification to a collective bargaining agreement, determined the seniority of testers based only on the number of years spent in a tester position. The plaintiffs argued that because tester positions had traditionally been held by men, the effect of the new system was to favor incumbent male testers over women promoted into tester positions. They alleged that the purpose of this change was to discriminate on the basis of sex.

Although the plaintiffs in *Lorance* did not file their EEOC charges within the applicable limitations period as calculated from the date of the change in the seniority system, they contended that their claims were nevertheless timely because they filed within the applicable time period, calculated from the date on which the new system was applied to them. In analyzing when the limitations period began to run for the plaintiffs' claim, the Court initially ob-

served that seniority systems having only a discriminatory impact do not violate Title VII, and thus plaintiffs could succeed on their claim only by proving a discriminatory purpose behind the adoption of the new system. *Id.* at ——, 109 S.Ct. at 2264–66. The Court reasoned that because discriminatory intent at its inception was the only fact or occurrence which, if proven, could establish a Title VII violation, and because this occurrence took place outside of the limitations period, plaintiffs' claims were not timely: "Because the claimed invalidity of the facially nondiscriminatory and neutrally applied tester seniority system is wholly dependent on the alleged illegality of signing the underlying agreement, it is the date of the signing which governs the limitations period." *Id.* at ——, 109 S.Ct. at 2268.

     █ *Evans* and *Lorance* indicate that the only relevant inquiry in the present type of continuing violation case is whether there has been a violation of the applicable law within the limitations period. The word "continuing" thus means nothing more than "recurring" when used in this context. Turning to that question in the present case, this court recognizes that, in the end, whether certain acts of defendant are viewed as violations of the statute or as merely the results of past violations is to some degree a matter of perspective. It would not be entirely unreasonable to view each payment by defendant to plaintiffs of their wages—wages that are less than they would be had the 1985 reduction not taken effect—as discrimination in response to plaintiffs' assertion of coverage under Section 7 and therefore a violation of Section 8. But the more logical construction, and the one most consistent with the reasoning of *Lorance,* is that of a one-time reduction occasioned by plaintiffs' assertion of coverage and therefore only a one-time violation. In *Lorance* the Court emphasized what proof would be necessary to establish plaintiffs' claim: that the change in the seniority system was motivated by discriminatory intent. Plaintiffs allege only discrimination in violation of Section 8; they do not allege that the current base wage rates and overtime paid by defendant, on their face, violate the minimum wage and overtime provisions of Section 7. Section 8 indicates that plaintiffs in the present case, like the plaintiffs in *Lorance,* could prevail only by proving a past event—that their wages were reduced because they asserted coverage under the FSLA.[3] This nexus between an assertion of coverage and the allegedly discriminatory act—the reduction of base wage rates—is the only characteristic of the present system which could possibly render it illegal under Section 8.

    In a slightly different context, the Fifth Circuit has set forth a consideration for the determination of whether a violation is continuing which supports this court's view that defendant violated Section 8 at only one point in time:

> Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on the continuing intent to discriminate?

*Berry,* 715 F.2d at 981.[4] The Fifth Circuit has likewise stated that in determining when a statute of limitations begins to run, a court is to focus "on what event, in fairness and logic, should have alerted the average lay person to act to protect his

---

**3.** It is unnecessary for purposes of this opinion to deal with the question of whether a plaintiff must prove retaliatory intent in order to prevail on a Section 8 claim. Even if it is true, as the Sixth Circuit has held, that a Section 8 plaintiff must show only that a unilateral wage reduction *resulted from* fiscal pressures created by the extension of the FLSA to state and local government, *see Blanton v. City of Murfreesboro,* 856 F.2d 731 (6th Cir.1988), proof of this causal connection would nevertheless, like the proof in *Lorance,* be based on events occurring only at the time the decision to reduce wages is made.

**4.** *Berry* dealt not with the question of whether the defendant's acts were violations at all, but with whether defendant's individual violations were part of one continuing violation. Nevertheless, the court is of the opinion that the same consideration should apply in the present context.