**Margaret F. JOHNSON,**
**Plaintiff–Appellant,**

**v.**

**James BURNLEY, Secretary of the**
**Department of Transportation,**
**Defendant–Appellee.**

**No. 88–3645.**

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 1989.

Decided Oct. 6, 1989.

Rehearing En Banc Granted
Jan. 2, 1990.*

---

\* Opinion Vacated.

Van Hewes Johnson, Elizabeth City, N.C., for plaintiff-appellant.

Rudolf A. Renfer, Asst. U.S. Atty., Raleigh, N.C. (Margaret Person Currin, U.S. Atty., Stephen A. West, Asst. U.S. Atty., on brief), for defendant-appellee.

Before MURNAGHAN and SPROUSE, Circuit Judges, and GORDON, Senior District Judge for the Middle District of North Carolina, sitting by designation.

MURNAGHAN, Circuit Judge:

Margaret F. Johnson appeals the district court's entry of summary judgment on her sex discrimination claim challenging her dismissal from a government secretarial job. She also seeks to have her dismissal invalidated under federal civil service law because of alleged procedural error in the disciplinary process that culminated in her firing.

## I.

Johnson was dismissed in 1986 from a secretarial job at the United States Coast Guard's Aircraft Repair and Supply Center in Elizabeth City, North Carolina. The government contends it fired her for excessive tardiness and unexcused absences which continued despite repeated warnings and reprimands from her superiors. Johnson argues that the tardiness issue is but a pretext for gender discrimination in her dismissal.

Johnson appealed her firing to the Merit Systems Protection Board, which upheld the dismissal. She then sought review in federal district court pursuant to 5 U.S.C. § 7703(b)(2), asserting a sex discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and challenging her dismissal under the Civil Service Reform Act of 1978, which authorizes judicial invalidation of personnel actions taken in violation of laws or government regulations. 5 U.S.C. § 7703(c)(2).[1]

Although the district court expressed doubt about its jurisdiction,[2] it nonetheless granted summary judgment in favor of the government on grounds that Johnson had failed to bring forth evidence to support a *prima facie* showing of sex discrimination. Alternatively, the court held that even if Johnson had made a *prima facie* showing, the government had articulated a legitimate, nondiscriminatory reason for Johnson's firing, and that Johnson's evidence, as a matter of law, would be insufficient to prove the government's proffered explanation was mere pretext. The court failed to explain its reasons for rejecting Johnson's efforts to have her dismissal invalidated on grounds of alleged procedural errors in the disciplinary process.

## II.

We turn first, as we must, to the question of the district court's subject matter jurisdiction to decide Johnson's case. A federal appellate court lacks discretion to review the merits until it satisfies itself that the court below had subject matter jurisdiction over the case. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); *Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884). Aside from abstract concepts of judicial power and federalism that underlie our obligation to decide the jurisdictional question, there are practical reasons that a federal court should refrain from making any pronouncement on the merits until it resolves doubts about subject matter jurisdiction. Dismissal of a case for lack of subject matter jurisdiction carries with it no claim preclusive effects. *Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1180 (4th Cir. 1989). By contrast, disposal of a case on the merits (including a grant of summary judgment) or for failure to comply with the statute of limitations, unless the court so ruling does so on a without-prejudice basis, does operate as *res judicata* barring subsequent litigation of the same claim in federal court. *Id.* at 1180–81.

The threshold question here is whether the 30–day time limit of 5 U.S.C. § 7703(b)(2) for seeking review of a decision of the Merit Systems Protection Board ("Board") in a discrimination case is a subject matter jurisdictional requirement or, instead, is equivalent to a statute of limitations subject to equitable tolling, estoppel or waiver. Section 7703(b)(2) provides that parties may obtain judicial review of Board decisions in discrimination cases by filing

under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), and section 16(b) of the Fair Labor Standards Act of 1938, as amend-

---

**1.** Although ostensibly applicable only to appeals in the Federal Circuit, Section 7703(c) also prescribes the proper standard of review in federal district court for non-discrimination claims that are coupled with discrimination claims in so-called "mixed" cases. *Romain v. Shear,* 799 F.2d 1416, 1421 (9th Cir.1986), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987). In a mixed case, such as Johnson's, the discrimination claim receives a *de novo* trial in the district court, while the non-discrimination claim is reviewed on the record. *Rana v. United States,* 812 F.2d 887, 889 n. 1 (4th Cir.1987); *Romain,* 799 F.2d at 1421.

**2.** The government contends that the district court found subject matter jurisdiction lacking. We disagree with the government's interpretation. Although the district court opined that the 30–day time limit for filing suit was a subject matter jurisdictional requirement, that pronouncement was mere dictum because the court failed to resolve definitively whether Johnson had complied with the deadline. The court merely noted that "it may lack subject matter jurisdiction." The government's confusion is understandable, however, in light of the cryptic nature of the district court's discussion of the jurisdictional issue.

ed (29 U.S.C. 216(b)), as applicable. Notwithstanding any other provision of law, *any such case filed under any such section must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action* ....

(Emphasis added).

■ Johnson failed to comply with Section 7703(b)(2)'s 30–day deadline. Because Johnson's case involved allegations of gender discrimination, she was required to file suit under Title VII of the Civil Rights Act of 1964, which specifies that "the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e–16(c). Naming a government department as the defendant will not satisfy Title VII's filing requirements. *See Warren v. Dep't of Army*, 867 F.2d 1156, 1158 (8th Cir.1989); *Cooper v. United States Postal Service*, 740 F.2d 714, 715–16 (9th Cir.1984), *cert. denied*, 471 U.S. 1022, 105 S.Ct. 2034, 85 L.Ed.2d 316 (1985). Johnson initially failed to comply with Title VII because her original complaint omitted the Secretary of Transportation as a defendant, but instead named the Department of Transportation, the Coast Guard and the Aircraft Repair and Supply Center where she had worked. She later corrected the mistake by amending her complaint to name the Secretary, but failed to do so until after the expiration of Section 7703(b)(2)'s 30–day deadline for filing suit in the district court.

■ Johnson's amendment will be deemed to relate back to the time of the original filing only if the Secretary of Transportation had received notice of the suit prior to expiration of the 30–day deadline. *See Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986); Fed.R.Civ.P. 15(c). The record reveals no evidence that the Secretary of Transportation received notice of Johnson's suit during the 30–day period. The mere

naming of the Transportation Department as defendant, without more, is insufficient as a matter of law to put the Transportation Secretary on notice of the suit. *See Gardner v. Gartman*, 880 F.2d 797, 799 (4th Cir.1989); *Cooper*, 740 F.2d at 717. There is no evidence that Johnson served the complaint on the Secretary or anyone designated to receive service on the Secretary's behalf before expiration of the 30–day deadline. Johnson therefore cannot invoke Fed.R.Civ.P. 15(c) to relate her joinder of the Secretary back to the time of filing of her original complaint in the district court.

■ The government argues that Johnson's failure to comply with the filing deadline of Section 7703(b)(2) deprives the federal courts of subject matter jurisdiction over her claims. Although all other federal circuits that have decided the issue have construed the 30–day deadline as a jurisdictional requirement, we believe the time period specified in Section 7703(b)(2) is, in cases involving gender or race discrimination claims, equivalent to a statute of limitations subject to equitable tolling, waiver or estoppel in appropriate circumstances.[3] The district court therefore had jurisdiction to proceed to the merits of Johnson's claims.

Of the five circuits that have addressed the question, three have concluded that Section 7703(b)(2)'s time limit is jurisdictional. *Hilliard v. United States Postal Service*, 814 F.2d 325, 327 (6th Cir.1987); *Lofton v. Heckler*, 781 F.2d 1390, 1392 (9th Cir.1986) (*per curiam*);[4] *King v. Dole*, 782 F.2d 274, 275–77 (D.C.Cir.) (*per curiam*), *cert. denied*, 479 U.S. 856, 107 S.Ct. 194, 93 L.Ed.2d 126 (1986). *See also Taylor v. Tisch*, 686 F.Supp. 304, 307–08 (S.D. Fla.1988) (jurisdictional). Two other circuits have left open the question. *James v. United States Postal Service*, 835 F.2d 1265, 1267 (8th Cir.1988); *Lee v. United States Postal Service*, 774 F.2d 1067, 1068–

---

**3.** Although we affirm the judgment of the court below, we disavow the district court's dictum that the 30–day time limit in Section 7703(b)(2) is jurisdictional. *See* note 2, *supra.*

**4.** The Ninth Circuit has subsequently hinted that it might interpret Section 7703(b)(2) differently if presented with the question anew. *See Valenzuela v. Kraft, Inc.,* 815 F.2d 570 (9th Cir.1987), *modifying* 801 F.2d 1170 (9th Cir.1986).

69 & n. 2 (11th Cir.1985) (*per curiam*). *See also Edinboro v. Dep't of Health & Human Services,* 704 F.Supp. 364, 366 (S.D.N.Y.1988) (declining to decide the jurisdictional question). No circuit, to our knowledge, has construed Section 7703(b)(2)'s 30–day deadline as non-jurisdictional.[5]

We part company with those circuits that have construed Section 7703(b)(2)'s deadline as jurisdictional because their interpretation is, we believe, contrary to congressional intent. Neither the plain language nor the legislative history of Section 7703(b)(2) evinces any intent to impose the 30–day deadline as a jurisdictional barrier to suit in federal court. Instead, Section 7703(b)(2), by explicitly incorporating Title VII procedures for cases involving alleged racial or gender discrimination, demonstrates Congress' intent that the 30–day deadline be interpreted as non-jurisdictional, as are various limitations periods in Title VII.

We turn first to the plain language of Section 7703(b)(2). Admittedly, the statute uses mandatory language to prescribe the time limit: "Notwithstanding any other provision of law ... any such case ... *must be filed* within 30 days...." 5 U.S.C. § 7703(b)(2) (emphasis added). The District of Columbia Circuit has read the mandatory language as a "clear and emphatic" indication of congressional intent to establish the 30–day deadline as a jurisdictional requirement, rather than a traditional limitations period. *See King,* 782 F.2d at 276. We disagree. The Supreme Court has emphasized that mere use of mandatory language does not convert a statutory time limit into a jurisdictional requirement. *Brock v. Pierce County,* 476 U.S. 253, 258–62, 106 S.Ct. 1834, 1838–40, 90 L.Ed.2d 248 (1986) (time limit containing word "shall"). The Court has construed a time limit in Title VII as non-jurisdictional, even though it is phrased in language equally as mandatory as that used in Section 7703(b)(2)'s 30–day deadline. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (interpreting 42 U.S.C. § 2000e–5(e), which states that a charge *"shall be filed* within one hundred and eighty days after the alleged unlawful employment practice occurred...." (emphasis added)). Because "must" and "shall" are virtually synonymous under traditional principles of statutory construction,[6] *Zipes* and *Pierce County* illustrate that the mandatory language of Section 7703(b)(2) in no way compels us to interpret the deadline as a jurisdictional barrier to tardy litigants.

The legislative history of Section 7703(b)(2) is no more helpful than the literal language of the statutory time limit in resolving the jurisdictional question. Only scant references to the 30–day deadline appear in the legislative history and none sheds any light on congressional intent. *See, e.g.,* S.Rep. No. 969, 95th Cong., 2d Sess. 63–64, *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723, 2785–86.

---

**5.** Nor have we found any circuit decision interpreting the virtually identical 30–day filing deadline in 5 U.S.C. § 7703(b)(1) as equivalent to a statute of limitations that may be equitably tolled or waived under appropriate circumstances. Section 7703(b)(1) provides that "[n]otwithstanding any other provision of law, any petition for review must be filed within 30 days after the date the petitioner received notice of the final order or decision of the Board." Four circuits and the federal Claims Court have held that 7703(b)(1)'s deadline is jurisdictional. *See Lewis v. IRS,* 691 F.2d 858, 859 (8th Cir.1982); *Boehm v. Foster,* 670 F.2d 111, 113 (9th Cir. 1982) (*per curiam* ); *Devine v. White,* 697 F.2d 421, 429 (D.C.Cir.1983); *Monzo v. Dep't of Transportation,* 735 F.2d 1335, 1336 (Fed.Cir. 1984); *Harris v. United States,* 13 Cl.Ct. 363, 365 (1987). The Fifth Circuit has implied, without explicitly deciding, that Section 7703(b)(1)'s deadline is jurisdictional. *See Jackson v. United States Postal Service,* 666 F.2d 258, 259–60 (5th Cir.1982) (*per curiam* ).

We leave to another day the thorny question whether Section 7703(b)(1)'s time limit is, like the deadline in Section 7703(b)(2), equivalent to a statute of limitations subject to equitable tolling, estoppel or waiver.

**6.** *See, e.g., Hewitt v. Helms,* 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983) (both are words of "an unmistakably mandatory character"); *Hicks v. Miranda,* 422 U.S. 332, 352, 95 S.Ct. 2281, 2293, 45 L.Ed.2d 223 (1975) (Burger, C.J., concurring) ("It is well settled that 'shall' means 'must'."). *Compare* Black's Law Dictionary 919 (5th ed. 1979) (defining "must") *with id.* at 1233 (defining "shall").

Congress has provided some guidance, however, by explicitly incorporating into Section 7703(b)(2) three anti-discrimination statutes—Title VII, the Age Discrimination in Employment Act ("ADEA"), and the Fair Labor Standards Act ("FLSA"). Section 7703(b)(2) requires the aggrieved employee who seeks judicial review of a Board decision in a discrimination case to file suit under one of the three statutes, depending on the type of discrimination alleged. In a sex discrimination case such as Johnson's, suit must be filed under Section 717(c) of Title VII, 42 U.S.C. § 2000e–16(c). We believe that by incorporating those anti-discrimination statutes into Section 7703(b)(2), Congress intended for 7703(b)(2)'s time limit to be treated as flexibly as the deadlines in the incorporated statutes. For example, in a gender discrimination case, Section 7703(b)(2)'s 30–day deadline would be construed as a jurisdictional requirement only if the 30–day filing deadline prescribed in 42 U.S.C. § 2000e–16(c) were also considered jurisdictional.

Where two plaintiffs each file suit under § 2000e–16(c), it makes no sense to provide the possibility of equitable tolling of the 30–day filing deadline for one plaintiff but not the other merely because of the different procedural routes taken by the cases prior to their arrival in federal district court. We see no clear signs that Congress intended to create such an anomaly.

One court has argued that using § 2000e–16(c) as a guide is inappropriate because Section 7703(b)(2) commands that suits be filed within 30 days *"[n]otwithstanding any other provision of law."* *Taylor,* 686 F.Supp. at 307. *Taylor* reads too much into the "notwithstanding" language. A more plausible reading is that Congress merely intended to emphasize that the deadline for seeking review under 7703(b)(2) is 30 days rather than a longer filing period that might appear in one of the three anti-discrimination statutes expressly incorporated by Section 7703(b)(2). Although, as we have noted, § 2000e–16(c) also specifies a 30–day deadline, the other

two anti-discrimination statutes incorporated by Section 7703(b)(2) have been interpreted as providing longer filing periods. *See Bornholdt v. Brady,* 869 F.2d 57, 64–67 (2d Cir.1989) (noting uncertainty over what limitations period applies for filing an ADEA suit under 29 U.S.C. § 633a) [7]; 29 U.S.C. § 255(a) (either two or three year limitations period for filing suits under section 16(b) of FLSA). By emphasizing that 30 days was the filing deadline under Section 7703(b)(2), Congress did not foreclose our turning to other statutes for guidance in determining whether the deadline should be treated as a jurisdictional requirement or as a statute of limitations subject to equitable tolling, waiver or estoppel.

Thus, we turn to § 2000e–16(c) to guide our interpretation of Section 7703(b)(2)'s 30–day deadline in cases involving alleged race or sex discrimination. Other circuits, even those that have interpreted Section 7703(b)(2)'s deadline as jurisdictional, have recognized § 2000e–16(c)'s relevance to the jurisdictional question that confronts us here. *See, e.g., Lofton,* 781 F.2d at 1392; *Lee,* 774 F.2d at 1068 n. 2 (declining to resolve jurisdictional question).

The Fourth Circuit has not explicitly decided whether the 30–day time limit of § 2000e–16(c) is a jurisdictional requirement. Other circuits have split on the issue, and the Supreme Court thus far has declined to resolve the conflict. *See Cooper v. United States Postal Service,* 471 U.S. 1022, 1024, 105 S.Ct. 2034, 2035, 85 L.Ed.2d 316 (1985) (White, J., dissenting from denial of *certiorari,* urging that split be resolved); *Stuckett v. United States Postal Service,* 469 U.S. 898, 899, 105 S.Ct. 274, 274, 83 L.Ed.2d 210 (1984) (same). Five circuits have construed the 30–day deadline as non-jurisdictional. *See Hornsby v. United States Postal Service,* 787 F.2d 87, 89 (3d Cir.1986); *Warren,* 867 F.2d at 1159; *Martinez v. Orr,* 738 F.2d 1107, 1110 (10th Cir.1984); *Milam v. United States Postal Service,* 674 F.2d 860, 862 (11th Cir.1982); *Mondy v. Sect'y of Army,*

---

7. We, of course, express no opinion on whether the deadline for filing an action under 29 U.S.C.

§ 633a is longer than 30 days.

845 F.2d 1051, 1055–56 (D.C.Cir.1988)[8]. Three other circuits have come to the opposite conclusion. *See Bell v. Veterans Admin. Hosp.*, 826 F.2d 357, 360–61 (5th Cir. 1987); *Williams v. United States Postal Service*, 873 F.2d 1069, 1074 (7th Cir.1989); *Jordan v. Clark*, 847 F.2d 1368, 1372 (9th Cir.1988), *cert. denied sub nom. Jordan v. Hodel*, —— U.S. ——, 109 S.Ct. 786, 102 L.Ed.2d 778 (1989).

The logic of our prior decisions, when read in light of Supreme Court precedent, convinces us that the 30–day deadline in § 2000e–16(c) is non-jurisdictional and, as such, is subject to equitable tolling, estoppel and waiver when justice dictates. The Supreme Court has construed as non-jurisdictional the Title VII filing deadline in 42 U.S.C. § 2000e–5(f)(1), which governs discrimination actions against private employers. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 n. 3, 103 S.Ct. 2392, 2395 n. 3, 76 L.Ed.2d 628 (1983). We see no reason to draw a different conclusion as to the filing deadline for federal employees' suits against the government. In extending Title VII protection to federal employees in 1972, Congress intended to give those public workers the same rights that private sector employees enjoyed. *Aronberg v. Walters*, 755 F.2d 1114, 1116 (4th Cir.1985). Accordingly, federal employees suing under § 2000e–16(c) should not be denied the benefits of equitable doctrines of tolling and estoppel that would be available to similarly situated private sector employees who sue under § 2000e–5(f)(1). *Martinez*, 738 F.2d at 1110. Anticipating the reasoning we set forth today, two district courts in this circuit have already held that the 30–day deadline of § 2000e–16(c) is non-jurisdictional. *See Hewlett v. Russo*,

649 F.Supp. 457, 459–60 (E.D.Va.1986); *Grier v. Carlin*, 620 F.Supp. 1364, 1365–66 (W.D.N.C.1985).

Although the Seventh Circuit and some commentators have argued that principles of sovereign immunity require that § 2000e–16(c)'s time limit be strictly construed as jurisdictional, *see Williams*, 873 F.2d at 1074 n. 5; *Harris v. Brock*, 835 F.2d 1190, 1194 (7th Cir.1987); Note, *Limitations Periods Under Title VII: Has Time Run Out on the Sovereign Immunity Doctrine?*, 63 B.U.L.Rev. 1157 (1983), we have previously rejected that argument in interpreting Title VII deadlines in the public-sector context. *See Zografov v. Veteran's Admin. Medical Center*, 779 F.2d 967, 968–69 (4th Cir.1985). *See also Bowen v. New York*, 476 U.S. 467, 478–79, 106 S.Ct. 2022, 2029–30, 90 L.Ed.2d 462 (1986) (limitations period for suits against federal government are not necessarily jurisdictional and may be subject to equitable tolling). Congressional intent determines whether sovereign immunity will apply in suits against the federal government, and as we have emphasized, Congress clearly intended that federal employees receive the same rights to sue under Title VII as private sector workers. Congress never intended to use sovereign immunity to deny federal employees the benefits of equitable estoppel, tolling or waiver in Title VII cases under appropriate circumstances.

In sum, the 30–day filing deadline in § 2000e–16(c) is non-jurisdictional, and accordingly, the 30–day time limit of 5 U.S.C. § 7703(b)(2) is also non-jurisdictional, at least for those discrimination cases which must be filed under Title VII.[9] The district court therefore had subject matter jurisdic-

---

8. *Mondy*, a panel decision, appears to have taken a position inconsistent with that of previous panels of the District of Columbia Circuit. *See King*, 782 F.2d at 277 n. 3; *Hofer v. Campbell*, 581 F.2d 975, 977 (D.C.Cir.1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979); *Richardson v. Wiley*, 569 F.2d 140, 142 (D.C.Cir.1977).

9. We leave open the question whether Section 7703(b)(2)'s time limit would likewise be subject to equitable tolling and estoppel in those cases which must be brought under a statute other

than Title VII, *i.e.*, under the ADEA or the FLSA. Deciding whether the 30–day deadline of Section 7703(b)(2) is non-jurisdictional in all cases would require us to decide whether the filing deadlines normally applicable to suits under the ADEA and the FLSA are jurisdictional. Because neither statute has direct relevance to Johnson's claims and because the parties have not discussed those statutory provisions, we do not believe it prudent to engage in detailed interpretations of either the ADEA or the FLSA at this time.

tion to reach the merits of Johnson's claims even though she failed to name the proper defendant in her district court action until well after the 30–day deadline had expired.

## III.

Although non-jurisdictional, the 30–day time limit must not be taken lightly, and failure to meet the deadline will necessitate dismissal under most circumstances. Johnson could invoke the doctrine of equitable estoppel to avoid the limitations bar of § 7703(b)(2) only by demonstrating, at the very least, "affirmative misconduct on the part of the government." *Zografov*, 779 F.2d at 969. We need not decide whether Johnson has met the stringent burden imposed by *Zografov*, because even if equitable estoppel or tolling were justified, Johnson's claims cannot survive summary judgment.

## IV.

Turning now to the merits, we first examine the district court's grant of summary judgment on Johnson's gender discrimination claim. To establish a *prima facie* case of unlawful discrimination, Johnson must make two showings:

(1) that plaintiff engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person.

*Moore v. Charlotte*, 754 F.2d 1100, 1105–06 (4th Cir.), *cert. denied*, 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985). In reviewing the grant of summary judgment, we must determine whether Johnson's evidence raises a genuine issue as to the existence of both of the factors required for a *prima facie* showing under *Moore*.

Neither party disputes that Johnson's evidence raises a genuine issue as to the second element required for a *prima facie* showing. As the district court emphasized, "[i]t is evident that the disciplinary action or removal action taken against Johnson was a more severe sanction than [that] imposed on other employees Johnson has used for comparison."

Nonetheless, the district court properly granted summary judgment in the government's favor on the gender discrimination claim because Johnson has failed to raise a genuine issue as to whether she engaged in misconduct similar to that of male employees who were not punished as severely. Johnson was required to proffer evidence that the other employees' conduct was of "comparable seriousness" to the repeated tardiness for which she was disciplined. *Moore*, 754 F.2d at 1107. She has failed to do so.

Johnson had a history of unexcused tardiness in reporting to her job in the mornings. It is undisputed that Johnson arrived late to work on numerous occasions from the summer of 1985 to the late spring of 1986. It is also undisputed that although Johnson was repeatedly warned not to arrive late, her tardiness persisted, prompting her supervisors to suspend her for a number of days as punishment for a string of unexcused late arrivals in early 1986. Despite such sanctions, Johnson continued to arrive late to work on various occasions and was eventually discharged.

With Johnson's work history in mind, we must examine the alleged misconduct by male workers who were not fired or similarly punished. Johnson unsuccessfully attempts to support her discrimination claim by comparing herself to five other employees—four men and one woman—who worked at the Aircraft Repair and Supply Center. At the outset, Johnson's comparison of herself with a female employee does nothing to support a *prima facie* showing of sex discrimination. Johnson must show that her employer treated her differently than similarly situated *male* employees. *Moore*, 754 F.2d at 1105–06. Yet she has produced no evidence that any of the male employees had attendance problems even approaching the level of seriousness of Johnson's misconduct. Although some of the men apparently had arrived late to work without valid excuse on a few occasions, there is no evidence that any of them repeatedly persisted in

tardy arrivals despite warnings, reprimands and punishment, as Johnson had done. Moreover, some of the men were not similarly situated to Johnson as far as time restrictions were concerned. Although Johnson claims to have seen some of the men arriving to work after the normal 8 a.m. starting hour, the undisputed evidence shows that at least three of those male employees had job responsibilities or duties that did not always require an 8 a.m. arrival at the Aircraft Repair and Supply Center where Johnson worked. One of the males, John Fay, was a private contractor and thus not subject to the Center's attendance policy. Dale Waterman was a photographer whose duties often required him to report directly to sites away from the Center in the mornings. Don Wray worked for the Management Information Services Division whose members had more flexible working hours because they were subject to recall throughout the day.

Johnson simply has produced no evidence that any of the four male employees she uses as a basis of comparison engaged in prohibited conduct of comparable seriousness to her repeated flouting of the attendance rules. Johnson therefore could not, as a matter of law, make out a *prima facie* case of gender discrimination, and the district court appropriately granted summary judgment in favor of the government.

## V.

Johnson also complains of three alleged procedural defects in the decision leading up to her discharge and in the administrative appeal of her firing. First, she complains that the administrative law judge erred in refusing to allow a number of her witnesses to testify. Second, she asserts that her removal violated the Coast Guard's personnel guidelines because prior to the termination decision, Commander Joel Thuma, her immediate supervisor, had discussed her tardiness problems with Commander Joseph Coleman, the individual who ultimately approved Johnson's firing. Johnson asserts that such consultation violated a Coast Guard personnel manual provision, which advised that

Particular caution must be exercised to assure that the individual designated to review and render the final decision has in no way been involved in the recommendation to take adverse action.

Finally, Johnson asserts that the government justified her firing by inappropriately taking into account absences for which she had received approval from her supervisors. None of these alleged procedural defects affects the validity of Johnson's dismissal.

The exclusion of witnesses by the ALJ does not provide grounds for reversal because there is no evidence that Johnson has suffered any prejudice. Even if the ALJ erred in excluding the witnesses, Johnson was entitled to a trial *de novo* in the district court on her sex discrimination claim, *Rana v. United States*, 812 F.2d 887, 889 n. 1 (4th Cir.1987), and thus could have attempted to present to the district court those witnesses whose testimony was relevant to the allegations of gender bias. In opposing summary judgment, Johnson could have proffered affidavits or depositions from those prospective witnesses. Yet we see no evidence that Johnson took any of those steps in the district court, and having neglected to do so, she has no grounds for complaining on appeal about exclusion of those witnesses who might have testified as to the sex discrimination claim.

A more difficult question arises as to those witnesses whose testimony might have proved relevant to the non-discrimination claim asserted by Johnson, *i.e.*, the asserted procedural errors in the disciplinary process. Johnson did not have the option of a *de novo* trial on her non-discrimination claim, *Rana*, 812 F.2d at 889 n. 1 ("nondiscrimination claims receive a record review"), and thus, the failure of the ALJ to allow her to present certain witnesses could have prejudiced her chances on that claim. However, the existence or degree of prejudice is merely speculative here for Johnson has failed to produce any evidence that her excluded witnesses had anything relevant to say about the issues presented in the non-discrimination claim.

The only information in the record pertaining to those proffered witnesses is a witness list with rather cryptic descriptions of the proposed testimony of each. None of those descriptions appears pertinent to the alleged violation of the Coast Guard personnel guidelines or to the allegedly improper consultation between Thuma and Coleman. Moreover, Johnson failed to produce evidence that any of those witnesses were prepared to present testimony even arguably relevant to the alleged procedural violations. Having failed to bring forth evidence at any stage of the proceedings to show the relevance of the expected testimony of the witnesses to her non-discrimination claim, Johnson cannot succeed on appeal merely by speculating as to what those witnesses might have said.

■ As for the alleged procedural violations themselves, Johnson has produced no evidence that the putative errors were "harmful", as she must to justify reversal or reconsideration of her firing. *See Cornelius v. Nutt*, 472 U.S. 648, 657–59, 105 S.Ct. 2882, 2887–88, 86 L.Ed.2d 515 (1985). *See also id.* at 663, 105 S.Ct. at 2891 (Congress did not intend to force the Government to retain incompetent or misbehaving workers "solely in order to 'penalize the agency' for nonprejudicial procedural mistakes it committed while attempting to carry out the congressional purpose of maintaining an effective and efficient Government."). The Merit Systems Protection Board has promulgated regulations defining "harmful error" as

> Error by the agency in the application of its procedures which, in the absence or cure of the error, would have been likely to cause the agency to reach a conclusion different than the one reached.

5 C.F.R. § 1201.56(c)(3) (1988). Nothing in the record suggests that Johnson would likely have avoided dismissal had none of the alleged procedural errors occurred. There is absolutely no evidence that Johnson would have received more lenient treatment had Coleman not discussed Johnson's

situation with Thuma prior to the ultimate decision to remove her from the secretarial job. Nor is there evidence that Thuma or Coleman responded to Johnson's attendance problems with action any harsher than might be expected from another supervisor in the chain of command. We dare say that not many employers would tolerate the repeated tardiness of their workers, especially those employees who cavalierly ignored warnings and reprimands arising from past attendance problems.

Johnson has also failed to produce evidence that she likely would have retained her job had her supervisors not taken into account approved absences in deciding to fire her. The government contends that approval for many of the relevant absences were granted after-the-fact, that is, after Johnson had arrived late for work. Despite the dispute over the circumstances surrounding some of the approved absences, Johnson has produced no evidence of a likelihood that those approved absences were the deciding factor in her firing. Johnson's attendance records show she was marked "AWOL" (absent without leave) more than a dozen times. She has produced no evidence that brings into question the accuracy of those records. Most telling is the fact that many of her unexcused absences followed closely on the heels of Johnson's reprimands and suspensions for prior attendance problems. The undisputed evidence shows that Johnson had numerous *unexcused* absences and had flouted clear warnings about prompt attendance. In that light, we see nothing to suggest that Johnson would likely have retained her job in the absence of the alleged procedural irregularities.[10]

## VI.

In conclusion, both the district court and this Court have subject matter jurisdiction to consider the merits of Johnson's claims, despite her failure to name the proper de-

---

**10.** We in no way suggest that the consideration of approved absences or Thuma's consultation with Coleman violated Coast Guard procedures or any other rules. We need not decide those questions in light of our conclusion that even if procedural irregularities occurred, Johnson has produced no evidence that they likely affected the decision to discharge her.

fendant within the 30–day deadline of 5 U.S.C. § 7703(b)(2). Nonetheless, Johnson failed to produce any evidence that could establish a *prima facie* case of gender discrimination. There was also no evidence that alleged procedural irregularities in the discharge decision and the administrative appeal would likely have changed the outcome of the adverse personnel action against Johnson. The district court therefore properly granted summary judgment in favor of the government on Johnson's sex discrimination claim and appropriately rejected her attempt to have her firing invalidated on procedural grounds. The judgment of the district court is

AFFIRMED.

GORDON, Senior District Judge, dissenting:

I believe that the time limit prescribed in Section 7703(b)(2) is mandatory and jurisdictional. Because Johnson failed to timely file her appeal from the Board's decision, I would dismiss this appeal without addressing the merits on the ground that the district court lacked subject matter jurisdiction.

## I.

The majority's conclusion that the thirty day time limit prescribed in Section 7703(b)(2) is non-jurisdictional depends upon its finding that Congress intended for this provision to be interpreted in the same manner as the time limits contained in the anti-discrimination statutes incorporated into Section 7703(b)(2). In support, the majority cites *Brock v. Pierce County*, 476 U.S. 253, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986), and *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), to "illustrate that the mandatory language of Section 7703(b)(2) in no way compels [the court] to interpret the deadline as a jurisdictional barrier to tardy litigants." *Supra* at 9. In my view, these cases are insufficient to permit this court to infer an intent contrary to the plain language of the statute.

At issue in *Brock* was whether the Secretary of Labor lost the power to recover misused CETA funds under Section 106(b) of the Comprehensive Employment and Training Act, which provided that the Secretary "shall" issue a final determination as to the misuse of CETA funds within 120 days after receiving a complaint, once the 120 day period expired. 476 U.S. at 255, 106 S.Ct. at 1836. The Court unanimously held that the 120 day time limit "does not, standing alone, divest the Secretary of jurisdiction to act after that time." *Id.* at 266, 106 S.Ct. at 1842.

In so holding, the Court distinguished the case before it from *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), wherein it held that an action filed by a private plaintiff after the expiration of the 300 day time period provided in Section 706(e) of the Civil Rights Act of 1964 was jurisdictionally barred. First, the Court noted that Section 106(b) required the Secretary to resolve the entire dispute within 120 days. Because the statute required a task far more substantial than the mere filing of a complaint, the Court concluded that there was less reason to believe that Congress intended for the time limit to serve as a jurisdictional bar. In contrast, the Court stated that "legislatures routinely create statutes of limitations for the filing of complaints, and Congress' intention to create a statute of limitations in Section 706(e) [in *Mohasco* ] was certainly unexceptional." 476 U.S. at 261, 106 S.Ct. at 1839.

Second, the Court found that public rights were at stake to the extent that the Secretary's delay prejudiced the rights of the taxpaying public rather than an individual plaintiff. In contrast, "*Mohasco* involved a private right of action, and the plaintiff's failure to file a complaint prejudiced only that plaintiff." *Id.*

In view of these facts, I contend that the analysis in *Brock* would give controlling weight to the literal meaning of statutory provisions prescribing deadlines for the filing of complaints which involve a private

right of action.[1]

In *Zipes*, the Court was asked whether the timely filing of an EEOC charge was a jurisdictional prerequisite to the bringing of a Title VII suit in federal court. The Court concluded that the provision granting federal courts jurisdiction under Title VII, which provided that charges of discrimination "shall be filed [with the EEOC] within one hundred and eighty days," did not constitute a jurisdictional prerequisite to suit in federal court. The Court emphasized that "[t]he structure of Title VII, the congressional policy underlying it, and the reasoning of our cases all lead to this conclusion." 455 U.S. at 393, 102 S.Ct. at 1132. However, I also find *Zipes* to be distinguishable from the present case.

First, the Court in *Zipes* noted that "[t]he provision specifying the time for filing charges with the EEOC appears as an entirely separate provision, and it does not speak in jurisdictional terms or refer in any way to the jurisdiction of the courts." *Id.* at 394, 102 S.Ct. at 1133. In contrast, there is a clear relationship between the time requirement in Section 7703(b)(2) and the authority of the district court to hear the case, and, to the best of my knowledge, all courts rendering an opinion on the issue have held that this language plainly limits jurisdiction to those cases in which there has been a timely filing with a federal court. *Hilliard v. United States Postal Service*, 814 F.2d 325, 327 (6th Cir.1987); *King v. Dole*, 782 F.2d 274, 275–77 (D.C. Cir.) (*per curiam*), *cert. denied*, 479 U.S. 856, 107 S.Ct. 194, 93 L.Ed.2d 126 (1986); *Lofton v. Heckler*, 781 F.2d 1390, 1392 (9th Cir.1986); *Taylor v. Tisch*, 686 F.Supp. 304, 307–08 (S.D.Fla.1988).

Second, the Court in *Zipes* stated that its interpretation of the statute vindicated the purpose served by the filing requirement, to give prompt notice to the employer. 455 U.S. at 398, 102 S.Ct. at 1135. Adopting the interpretation of the majority, however, would contravene the underlying purpose of the Civil Service Reform Act, which is to "reduce substantially both the amount of time consumed by the appellate process and the courts' role in reviewing federal agencies' decisions to discipline and dismiss their employees; these goals would be ill-served by a potentially limitless expansion of the length of the appellate process." *Devine v. White*, 697 F.2d 421, 430 (D.C. Cir.1983) (footnotes omitted) (addressing Section 7703(b)(1)). Instead, the court should hold that the time limit of Section 7703(b)(2) is a jurisdictional prerequisite, which would accord with the objective of giving finality to the decisions of federal agencies.

Finally, the majority's application of *Zipes* to the present case is inappropriate because the Court in *Zipes* was guided by legislative history which revealed the congressional intent, 455 U.S. at 394–95, 102 S.Ct. at 1133–34, and its result was foreshadowed by prior decisions, *id.* at 395–98, 102 S.Ct. at 1133–35. Yet, the majority recognizes that the legislative history accompanying Section 7703(b)(2) does not reveal any congressional intent, *supra* at 476–477, and cites no authority involving the filing of untimely petitions for judicial review by federal employees.

## II.

Section 7703(b)(2) incorporates three anti-discrimination statutes. According to the majority, this fact, standing alone, evinces the congressional intent that the deadline contained in Section 7703(b)(2) and the time limits prescribed in the incorporated statutes are to be interpreted identically. *Cf. King*, 782 F.2d at 277. In particular, the majority contends that "Section 7703(b)(2)'s 30–day deadline would be construed as a jurisdictional requirement only if the 30–day filing deadline prescribed in 42 U.S.C. section 2000e–16(c) were also considered jurisdictional." *Supra* at 477.

I disagree. Section 7703(b)(2) provides that "*notwithstanding any other provi-*

---

**1.** The Court in *Brock* also looked to the House and Senate Hearings and the Congressional Record to determine the jurisdictional effect of the 120 day limit, and concluded that interpreting the provision as a jurisdictional bar would contravene the policies that motivated the 1978 amendments to the Act. 476 U.S. at 262–65, 106 S.Ct. at 1840–42. The majority has decided against the plain meaning of Section 7703(b)(2) without the benefit of such legislative documentation.

*sion of law,* any such case filed under any such section *must* be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action under such section 7702" (emphasis added). This language is clearly mandatory and jurisdictional, and the quantum of "congressional intent" found by the majority is insufficient, in my opinion, to justify a conclusion to the contrary. It is well established that a court must not ignore the plain meaning of a statute "[a]bsent a clearly expressed legislative intention to the contrary." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

Moreover, the analysis undertaken by the majority in which it refers to analogous statutory provisions should be foreclosed by the "notwithstanding" language of Section 7703(b)(2). Under a plain language reading of this phrase, if it is to be accorded any meaning, it must stand for the proposition that Section 7703(b)(2) is not to be governed by analogous statutory filing periods incorporated therein. *Taylor,* 686 F.Supp. at 307. Any other reading would render this language mere surplusage.

But even if the court needs to turn "to other statutes for guidance in determining whether the deadline should be treated as a jurisdiction requirement," *supra* at 477, I submit that Section 7703(b)(1) is the most analogous statute. *King,* 782 F.2d at 275; *Taylor,* 686 F.Supp. at 308. The majority concedes that the thirty day deadline of Section 7703(b)(1) is "virtually identical" to that of Section 7703(b)(2). *Supra* at 476 n. 5. The courts unanimously agree that the deadline in Section 7703(b)(1) is jurisdictional. *Id.* (citing cases). I feel no need to depart from this existing authority and would extend the reasoning to Section 7703(b)(2).

Accordingly, I respectfully dissent from the opinion of the majority and would dismiss the appeal for lack of jurisdiction.