**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROSE ANNE YOUNG,
Plaintiff-Appellant,

v.

TOGO D. WEST, Jr., Secretary of the
Army,
Defendant-Appellee.

No. 97-2066

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-96-1405-A)

Argued: January 26, 1998

Decided: June 16, 1998

Before WILKINSON, Chief Judge, and HAMILTON and
MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Brian Wayne Cubbage, PALEOS & KRIEGER, P.C.,
Alexandria, Virginia, for Appellant. Captain Michele Edwards Wil-
liams, Litigation Division, DEPARTMENT OF THE ARMY, Arling-
ton, Virginia, for Appellee. **ON BRIEF:** Thomas M. Ray, Special
Assistant United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Rose Anne Young appeals from the district court's grant of summary judgment in favor of her former employer, the United States Army, on (among other things) her claim that she was fired in retaliation for filing a Title VII complaint. The court rejected Young's Title VII retaliatory discharge claim on the ground that Young was not an employee of the Army at the time she said she was fired. The court reached this conclusion because an administrative law judge (who reviewed Young's claim that she was constructively discharged from the civil service) found that Young had resigned her position with the Army two days prior to her alleged firing. The district court held that it was bound by this administrative finding. Young argues that it was improper for the court to defer to this finding when evaluating her Title VII retaliatory discharge claim and, therefore, the court was wrong to hold that she was not an Army employee on the date she claims she was fired. We agree that the court should not have deferred to the prior administrative finding because Young was entitled to de novo consideration of all issues of fact underlying her Title VII retaliatory discharge claim. However, we conclude that Young still failed to forecast proof that would show she was an Army employee at the time she was allegedly fired. A careful review of the record reveals that Young did not dispute that she failed to take the proper steps to revoke her prior resignation. Accordingly, we affirm the district court's grant of summary judgment for the Army on Young's Title VII claim.

I.

Young, a civil servant, worked at the Pentagon as an administrative assistant. On August 3, 1993, Young submitted her written resignation, to be effective August 17, on a "request for personnel action" form. After hearing of this, Young's supervisor, Colonel (now Briga-

2

dier General) Robert L. Nabors tried unsuccessfully to dissuade her from resigning. On August 17 Richard Edelman, a high level civilian Army employee, received Nabors' permission to speak with Young about delaying her decision to resign. Edelman convinced Young to take two weeks off before deciding whether to leave the Army. Although Edelman had not mentioned the leave idea to Nabors beforehand, Nabors agreed (when talking with Edelman the next day) to allow Young to go on leave from August 17 to August 30 to think about her decision.

A federal employee may rescind her resignation at any time before the end of the day that it goes into effect. According to Edelman, he told Young during their August 17 conversation that if she wanted to go on leave she would have to contact the civilian personnel office (CPO) in order to withdraw her resignation and request annual leave. In fact, Edelman testified, he informed Young that only she could contact the CPO to rescind her resignation and go on leave. In her deposition Young said that Edelman never told her she had to withdraw her own resignation or put in for annual leave; Edelman, she said, told her that he would take care of it. However, Young offered no evidence to show that Edelman could have withdrawn her resignation for her or that (even if Edelman could have rescinded her resignation) he did not do so for discriminatory reasons. Young never contacted the CPO to withdraw her resignation or to request leave on or after August 17.

However, when Young did not return to work after August 17 (a Tuesday), the Army processed a timecard for Young with 24 hours (3 days) of annual leave for that week. Federal employees cannot take leave after they resign, so Young's August 3 written resignation request either did not take effect on the stated date, August 17, or the CPO made a mistake when it paid Young for those 24 hours of leave. After Young was terminated, the Army processed a corrected timecard that retroactively credited 24 hours of leave back to Young.

On August 24 Young called Nabors and the deputy director of her department and informed them that she was "not coming back." Concluding that Young had resigned, Nabors took steps to have another civilian employee, Denise Richards, fill Young's position with his department. CPO employee Mary Laverty testified in deposition that

3

the Army accepts oral resignations, although it generally encourages an employee to confirm resignation "with something in writing." Young's expert on civil service employment practices confirmed by affidavit that resignations may be oral, although he said that they are most often followed up with paperwork.

Young admitted in her deposition that she called Nabors on August 24 and told him that she intended to resign. However, she testified that she intended for her resignation to be effective August 30, when she was due back from leave. Young's expert backed her up on this. In his affidavit he said that it was reasonable to conclude from Young's statement on August 24 that she meant she was "not coming back" after her leave ended on August 30. Thus, he opined, Young could have rescinded her oral resignation before its August 30 effective date.

In her deposition Young testified that she received a phone call from Nabors regarding work-related matters on August 25. Young said it was her impression from this conversation that she was still an employee of the Army because Nabors treated her like an employee throughout the phone call.

On the morning of August 26, Young appeared in Nabors' office and told him that she wanted "that bimbo [Richards] . . . out of here" because she (Young) was returning to work. Nabors informed Young that she had resigned her position twice, on August 17 and August 24, and that as far as he knew she was not an employee of the Army anymore. Young then threatened to file an Equal Employment Opportunity (EEO) complaint against Nabors, although it was not entirely clear to him that she actually intended to do so until he heard from the Army's EEO office later that afternoon. After this meeting, Young went directly to the Army's EEO office to see about filing a complaint against Nabors for harassment based on her sex, race, or national origin.

Immediately after Young left his office, Nabors called CPO personnel to inform them of the verbal resignation and to ask if Young was still an Army employee. The two CPO employees with whom Nabors spoke, Laverty and Katie Covington, told Nabors that Young's verbal resignation was effective and that he did not have to

4

allow her to rescind it. They also told him that Young's August 3 (written) resignation was binding as well. According to Nabors, his calls to Covington and Laverty were requests for advice on Young's employment status, not attempts to take adverse personnel action against Young. However, Nabors did not inform either Covington or Laverty that he had agreed to allow Young to go on leave effective August 17. Nabors also admitted that in his conversations with Covington and Laverty he "asked that [Young's] resignation of 17 August 1993 be activated." Later that day (August 26) Nabors called Young into his office and told her that he had checked with the CPO and found that she was no longer an Army employee.

Meanwhile, at the time Nabors spoke with Covington and Laverty on August 26, Young's written resignation request dated August 3 (which she never asked the CPO to revoke) was still being processed by the CPO. In fact, that resignation had already been approved by the CPO's personnel division and had been sent to the CPO's technical services division for entry into the Army database, the last step necessary for it to become final. There was no evidence that the CPO took any action to activate this resignation on or after August 26 other than entering it into the Army database. Young's August 3 written resignation, effective August 17, was finalized on August 27. Further, according to Laverty, the CPO usually finalizes an employee's resignation well after its effective date because "it takes time for that piece of paper to make its way through the entire personnel office."

Young filed an EEO complaint alleging that due to her sex, race, or national origin, she had been subjected to harassment and had been denied an opportunity to revoke her resignation. The EEOC administrative law judge (ALJ) viewed Young's complaint as a "mixed case" complaint because it alleged that Young had been involuntarily terminated from the civil service, a claim that fell under the jurisdiction of the Merit Systems Protection Board (MSPB). Thus, the ALJ at the EEOC severed this involuntary termination claim from her harassment claim and remanded the termination claim to the MSPB.

At an evidentiary hearing before an MSPB ALJ, Young testified that she had not resigned on August 24. The ALJ did not credit Young's testimony and decided that her oral resignation was effective on that date. The MSPB ALJ determined that since Young had

5

resigned two days before she asked to rescind her resignation on August 26, the Army was not obliged to allow Young to withdraw her resignation. Therefore, the ALJ decided, Young had failed to prove that her resignation was involuntary. The MSPB appeals board denied Young's petition for review.

In the proceedings before the EEOC, Nabors was in charge of the Army's responses to all document production requests. Nabors certified that no existing documents showed that the Army approved leave for Young after August 17. Yet the CPO record keeper admitted in her deposition that the Army had processed a timecard for Young for the pay period ending August 21 with 24 hours of leave on it. Later, the Army processed a "corrected" timecard that retroactively credited these 24 hours of leave back to Young.

Nabors told the MSPB that he did not get involved with employee timecards. But Nabors later admitted in his deposition that he sometimes signed civilian employees' timecards when their direct supervisors were unavailable. Further, Richards (Young's replacement) testified that she had Nabors sign both her timecard and Young's timecard on August 19. In discovery the Army produced Richards' timecard. However, the Army reported that Young's timecard was missing from storage (its retention period had not yet expired). The Army never produced this timecard.

Young sued the Army, alleging that: she had been harassed by Nabors based on her sex, race, or national origin; she had been constructively discharged because of her sex, race, or national origin; and she had been discharged in retaliation for engaging in activity protected by Title VII. Young brought all of these claims under Title VII and did not appeal the MSPB decision.

The district court granted summary judgment to the Army on all three of Young's Title VII claims. The court held that even though Young had not appealed the MSPB decision, hers was a"mixed case" that presented both MSPB claims and Title VII discrimination claims. Holding that it was required to review "the discrimination claims de novo and the other claims on the basis of the MSPB record," the court proceeded to review Young's Title VII harassment claim de novo and her Title VII retaliatory discharge and constructive discharge claims

6

based on the administrative record. Specifically, as to the retaliatory discharge claim, the court declined to "review[that claim] de novo because of the prior findings made by the [MSPB]" that Young resigned her position with the Army on August 24, 1993. If the findings stood, the court reasoned, then Young could not prove that she was discharged in retaliation for her EEO complaint because she was not an employee on August 26, 1993. After reviewing the record, the court concluded that the ALJ's finding was not arbitrary or capricious, was made in accord with procedures required by law, and was supported by substantial evidence. Therefore, the district court held that Young could not make out a prima facie case of retaliatory discharge.

II.

A.

On appeal Young claims that the district court was wrong to grant the Army's motion for summary judgment on her Title VII retaliatory discharge claim.**1** Young argues that the court improperly applied the deferential standard of review reserved for MSPB appeals instead of the de novo review it must afford all Title VII claims of discrimination. The Army contends, however, that the court correctly applied de novo review to Young's "discrimination claims" and deferential review to her "nondiscrimination claims." It just so happens, the Army argues, that the same factual issue that was determinative of Young's "nondiscrimination claim" that she was not involuntarily terminated on August 24 was also dispositive of her"discrimination claim" that she was discharged in retaliation for engaging in protected activity on August 26. And, because there was no reason for the court to disturb the MSPB ALJ's finding that Young voluntarily resigned from the civil service on August 24, that fact controlled the district court's de novo review of her retaliatory discharge claim. Here, the

_____

**1** Young also appeals the district court's grant of summary judgment on her harassment claim (to which the court applied the proper, de novo standard of review) and two of the court's evidentiary rulings. We have considered Young's argument on the harassment claim and find it to be without merit. Further, the court's evidentiary rulings were not an abuse of its discretion.

Army's position is that the question of whether Young made a prima facie case of retaliatory discharge (including the underlying factual question whether she was an Army employee on August 26) was a "discrimination claim" and that the question of whether Young was involuntary terminated from the civil service (including the ALJ's determination that she resigned August 24) was a "nondiscrimination claim." This position misconstrues the plain language of the statute governing review of mixed cases, misreads the district court's opinion, and mischaracterizes Young's claim.

A district court has jurisdiction to review "mixed cases," which involve both Title VII discrimination claims and civil service claims appealed from the MSPB, under 5 U.S.C. § 7703. See Johnson v. Burnley, 887 F.2d 471, 474 n.1 (4th Cir. 1989), vacated and appeal dismissed; Rana v. United States, 812 F.2d 887, 888 n.1 (4th Cir. 1987). In such cases, the court reviews the Title VII claims and the claims appealed from the MSPB separately. With regard to the MSPB claims, the court must "review the record" and set aside any agency findings or conclusions that are "arbitrary or capricious," "obtained without procedures required by law," or "unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1)-(3). However, with regard to claims of "discrimination brought under [Title VII] the employee applicant shall have the right to have the facts subject to trial de novo." 5 U.S.C. § 7703(c) (emphasis added). Thus, quite contrary to the Army's construction of § 7703(c), if Young's case presented both Title VII discrimination claims and an appeal from an MSPB decision, it would not have been proper for the district court to allow an MSPB ALJ's factual findings to control the court's de novo review of the Title VII discrimination claims. Rather, the court would be required to review de novo all the facts underlying the Title VII discrimination claims when evaluating those claims, and then review the findings of the MSPB ALJ deferentially when evaluating any claims appealed from the MSPB. As a result, it would be possible for the court to determine that Young created a genuine issue of fact that she was an Army employee on August 26 for the purpose of her Title VII retaliatory discharge claim and at the same time uphold the MSPB ALJ's finding that Young voluntarily resigned from the Army on August 24 for the purpose of the involuntary termination claim (if she had appealed that claim from the MSPB).

8

The Army also misread the district court's opinion, which did not even purport to engage in de novo review of Young's retaliatory discharge claim. The court held that Young's case was a mixed case and explicitly reviewed her retaliatory discharge claim as a "nondiscrimination claim." This was error. Title VII retaliatory discharge claims are "discrimination" claims under§ 7703(c). See 42 U.S.C. § 2000e-3 (Title VII provision prohibiting what we term"retaliatory discharge" actually prohibits "discriminat[ion]" against employees for protected activity); see, e.g., Holifield v. Reno, 115 F.3d 1555, 1566-67 (11th Cir. 1997) (per curiam adopting district court opinion) (reviewing retaliatory discharge claim de novo under§ 7703(c)); Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993) (same). Indeed, all Title VII claims are "discrimination" claims. Therefore, even if Young's complaint had presented a mixed case, the court applied the wrong standard of review to her retaliatory discharge claim.

However, the district court was wrong to characterize Young's case as a mixed case in the first place. Young did not appeal the MSPB decision that she had voluntarily resigned on August 24. She simply brought a Title VII claim in federal court, alleging (among other things) that she was discharged in retaliation for engaging in activities protected by Title VII. A federal employee is not required to appeal a prior MSPB decision or have adverse MSPB factfindings set aside in order to bring a Title VII claim in federal court. Such a requirement would place a federal employee who goes to the MSPB in a worse position than a private employee who goes to the EEOC. This would be contrary to § 7703(c), which, by providing a trial de novo on Title VII claims in mixed cases, requires that civil servants be treated exactly like other Title VII plaintiffs. Cf. Johnson, 887 F.2d at 477. MSPB factfinding is accorded no weight when a district court evaluates a federal employee's Title VII claims. Any other rule would nullify a federal employee's right to have her Title VII claims decided in federal court.

Therefore, despite the Army's attempt to focus on the MSPB decision, review of that decision simply was not an issue in this case. We hold that the district court erred by reviewing the MSPB ALJ's decision under 5 U.S.C. § 7703(c)(1)-(3) when considering whether Young's Title VII claim for retaliatory discharge could survive summary judgment. Specifically, the court should not have deferred to the

9

MSPB's finding that Young resigned on August 24, 1993, when it (the court) evaluated Young's evidence that she was discharged on August 26 in violation of Title VII. In determining whether Young was an employee of the Army on August 26, the court should have considered her evidence under the same standard for summary judgment used in any Title VII case.

B.

We may still affirm the district court's grant of summary judgment on Young's Title VII retaliatory discharge claim if it was proper under the correct standard of review. Summary judgment is a purely legal question that we may decide by conducting our own review of both parties' evidence.

Summary judgment is proper when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(e). In order to avoid summary judgment on a retaliatory discharge claim, an employee must first establish a prima facie case of retaliation. To do so she must first offer evidence from which a reasonable jury could find that (1) she engaged in protected activity, (2) after which she was fired, and (3) there was a causal link between her protected activity and her termination. See Hopkins v. Baltimore Gas & Elect. Co., 77 F.3d 745, 754 (4th Cir.), cert. denied, 117 S. Ct. 70 (1996); McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir. 1991). Once the employee makes out a prima facie case of retaliation, the burden of persuasion then shifts to her former employer, who must offer evidence of a legitimate, non-discriminatory reason for her termination. See Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). When the employer produces such a reason, the burden shifts back to the employee, who must produce evidence that the employer's proffered reason for her termination was merely pretext for intentional discrimination. See id. If the plaintiff presents evidence to create a material issue of fact on each element of the prima facie case and on the issue of pretext and discrimination, then summary judgment is inappropriate.

We conclude that Young presented ample evidence from which a reasonable jury could find that she established a prima facie case of discrimination. To establish prong one (protected activity) she offered

10

evidence that she told Nabors on the morning of August 26, 1993, that she would file an EEO complaint against him. Although Nabors claimed that he did not know that Young would act on her threat, he admitted that she "threatened [him] with an EEO complaint" that morning. Further, the Army does not contest that Young visited its EEO office to see about filing a complaint immediately after leaving Nabors's office. From this, a jury could find that Young told Nabors she planned to file an EEO complaint against him, which is protected activity, see, e.g., Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994).

With regard to prong two (termination after protected activity), Young adduced evidence that she was an employee of the Army on August 26, 1997, when she engaged in her protected activity and that she was terminated later that day (effective August 27). The Army does not contest that although Young initially planned to resign on August 17, Edelman convinced her to revoke her resignation and go on leave before the resignation became effective. Also, the Army's own record keeper admitted that the Army credited Young (at least initially) for 24 hours of annual leave after August 17 for the August 21 pay period (possibly corresponding to Wednesday through Friday, August 18 to 20). Further, Young's expert testified that a federal employee cannot take annual leave after she has resigned. Thus, Young presented some evidence that she was still an Army employee after August 17 because she agreed to revoke her resignation and go on leave.

The Army contends, however, Young was not an Army employee on August 26 because she resigned on August 24. We agree that there was substantial evidence to support that contention. But we do not sit as a jury. If Young offered sufficient evidence from which a reasonable jury could find that she did not resign on August 24, she met the second prong of her prima facie case. We conclude that Young's evidence, read in the light most favorable to her, was sufficient to show she was still an Army employee on August 26.

First, Young's evidence suggested that when she told Nabors on August 24 that she was "not coming back" she meant she planned to resign effective August 30. Young testified that she did not intend to resign on August 24. Her expert confirmed this view when he opined that it was only reasonable to conclude that Young intended to resign

11

effective August 30, after her leave expired. Further, the expert testified that in order for an oral resignation to be effective it usually must be followed up with written documentation. Although the Army sometimes accepted oral resignations, it had no documentation to confirm that Young had orally resigned on August 24.

Second, Young produced evidence that Nabors considered her an Army employee on August 25, the day after he said she resigned. Nabors telephoned Young on August 25 to speak about work-related business. During the call he treated her like an employee and did not indicate to her that he thought she had resigned.

Third, Young's evidence suggested that Nabors believed that her purported August 24 resignation was not valid. Nabors admitted that during his August 26 conversations with Laverty and Covington he "asked that [Young's] resignation dated 17 August 1993 be activated." If Young had effected a valid oral resignation on August 24, for which no documentation was necessary, there was no need to activate her earlier, written resignation. Moreover, it seems odd that Nabors called Laverty and Covington to inform them of Young's oral resignation on August 26, immediately after Young met with him about returning to her job, rather than on August 24, when the resignation supposedly occurred.

Fourth, Young produced evidence from which a jury could infer that Nabors attempted to cover up the fact that he agreed to place her on leave after August 17. Nabors was in charge of the Army's document production efforts before the EEOC, and he certified that no documents showed that Young was on leave after August 17. Yet, Young received 24 hours of annual leave and the Army's own record keeper admitted that there must be documentation for that. Nabors also denied that he got involved with timecards, but Young's replacement, Richards, said that Nabors had signed Young's timecard for the week of August 21. Further, when Nabors called Covington and Laverty on August 26 to ask whether Young was still an Army employee, he did not inform them that he had placed Young on leave after August 17.

Taken together, this evidence could lead a reasonable jury to conclude that Young did not orally resign on August 24. Therefore, she met the second prong of her prima facie case.

Finally, Young also offered evidence to meet the third prong of her prima facie case (causal link between termination and protected activity). On August 26 Nabors asked Covington and Laverty to activate Young's August 17 resignation immediately after she (Young) threatened Nabors with an EEO complaint. Here, the temporal proximity of Young's threat and her termination by Nabors could, by itself, allow a reasonable jury to find that Young's termination was causally linked to her protected activity.

However, we also conclude that the Army offered a legitimate, non-discriminatory reason for Young's termination. Even if Young's evidence tended to prove that Nabors fired her on August 26 in retaliation for threatening him with an EEO complaint, the Army claims that Young would have been terminated anyway because she did not rescind her August 3 (written) resignation request before it became effective on August 17.[2] As a result of Young's failure to withdraw her August 3 resignation request, her resignation was processed by the Army as if she had never been placed on leave. It was simply too late for Young to rescind the resignation on August 26; the resignation had gone into effect on August 17 and all that remained was mere processing.[3] Therefore, the Army has produced sufficient evidence to convince a reasonable jury that Young would have been terminated regardless of whether Nabors called the CPO and directed that her written resignation be reactivated, because Young never requested that the resignation be deactivated before its August 17 effective date.

Young has offered no evidence to rebut this claim by the Army or to show that it was pretext for discrimination. Even if her evidence suggested a cover-up on Nabors's part, this evidence is of no help to

_____

[2] This is true regardless of whether Edelman told Young on August 17 that she had to contact the CPO to cancel her resignation. Young offers no evidence to suggest that Edelman was responsible for informing the CPO about putting her on leave.

[3] By August 26 the CPO had signed off on Young's resignation and it was ready to be entered into the Army's database. The only act the Army performed to effectuate her written resignation on or after August 26 was the perfunctory task of entering it into the database. Thus, Young's resignation was finalized on August 27 without any further discretionary action from Nabors or the CPO on or after August 26.

her. No matter what Nabors did -- even if he did try to fire her on August 26 -- it did not matter because she had already resigned on August 17. Further, we see no significance in the fact that Young's timecard was corrected after she was terminated. We attribute no sinister reason to this, and Young suggests none. Most likely, after Young's August 3 resignation finally wound its way through the Army bureaucracy, someone realized that Young should not have been on annual leave after the resignation's August 17 effective date and credited the leave back to her.

Because we conclude that Young did not present evidence that the Army's proffered legitimate reason for her termination was mere pretext for retaliation, we find that summary judgment for the Army on Young's retaliatory discharge claim was proper. Therefore, the judgment of the district court is

AFFIRMED.

14