944 F.2d 900
 2 NDLR P 80
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Cleotilde ARCHULETA, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 91-2029.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 13, 1991.
Decided Sept. 13, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, District Judge. (CA-89-3324-JFM)
 Glenn H. Carlson, Carlson & Cafferty, P.C., Washington, D.C., for appellant.
 Richard D. Bennett, United States Attorney, Carmina S. Hughes, Assistant United States Attorney, Baltimore, Md., Eileen M.I. Houghton, Senior Trial Attorney, Office of General Counsel, United States Department of Health and Human Services, Washington, D.C., for appellee.
 D.Md.
 AFFIRMED.
 Before DONALD RUSSELL, WIDENER and K.K. HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Cleotilde Archuleta was employed by the National Institute of Health (NIH), a division of the Department of Health and Human Services (HHS or the Agency) from January 1983 until March 1985. She was terminated in 1985 by Alfred Salas, her first-line supervisor. She claimed that this termination was discriminatory based upon her handicap (elbow, foot, and neck injuries), age (53), sex, or national origin (Hispanic), or that it was in retaliation for a complaint she lodged with an Equal Employment Opportunity (EEO) counselor.[1] Archuleta filed this employment discrimination action in the district court after exhausting all avenues of administrative review. The district court granted summary judgment for the defendant, and Archuleta appealed. We affirm.
 
 
 2
 * Archuleta was a GS-4 clerk/typist at NIH. Her duties included typing, filing, preparing reports, serving as a receptionist, and setting priorities. She received a satisfactory rating after her first year at NIH, but she was informed that she needed to improve, particularly in proofreading her typing, insuring the accuracy and timeliness of her reports, and keeping her filing current. During her second year at NIH she was repeatedly counseled to improve in these areas by Alfred Salas, her supervisor. However, she failed to improve. In November 1984 Salas informed Archuleta that he would recommend that she not receive a within-grade salary increase, and that if her work did not improve further disciplinary action might be necessary. He noted specifically that her typing, filing, and priority-setting performances were all unsatisfactory, and warned her that if she did not improve immediately she would be terminated. Archuleta filed a grievance challenging the denial of the within-grade increase, but that grievance was denied. Salas subsequently recommended that she be terminated due to unsatisfactory performance in these three areas.
 
 
 3
 Archuleta filed a grievance regarding her proposed termination. The grievance was reviewed by Richard Sherbert, Archuleta's second-line supervisor. Sherbert found that the unsatisfactory rating was warranted on all three performance factors cited by Salas and upheld the rating and the proposed termination. Archuleta asked for reconsideration and hired an attorney to assist her. After a hearing at which Archuleta was represented by counsel, Sherbert raised her rating to satisfactory on typing and setting priorities, but found that her unsatisfactory rating for filing was warranted. He concurred with Salas's recommended denial of Archuleta's within-grade increase and termination based upon her unsatisfactory filing. The decision to terminate Archuleta was adopted by Dr. Robert Windom, Assistant to the Secretary for Health.
 
 
 4
 Archuleta filed a complaint with the Merit Systems Protection Board (MSPB), claiming that her termination was discriminatory and that it did not comply with the pertinent civil service regulations. The MSPB conducted an evidentiary hearing before Administrative Judge (AJ) Joseph Clancy. AJ Clancy found that there was substantial evidence that Archuleta's performance was unacceptable. The Board granted review of AJ Clancy's holding, but affirmed his decision.
 
 
 5
 Archuleta next sought review of the MSPB's decision by the Equal Employment Opportunity Commission (EEOC). The EEOC found that Archuleta failed to prove a prima facie case of discrimination based upon sex, age, or national origin. The EEOC also found that Archuleta was not handicapped under the meaning of 29 C.F.R. § 1613.702(a). Finally, the EEOC found that Archuleta engaged in protected activity prior to her termination, namely her grievance regarding denial of a within-grade increase, and that she therefore stated a prima facie case of retaliatory discharge. However, the EEOC found that the Agency articulated a legitimate, nondiscriminatory reason for her termination, specifically her unsatisfactory work performance. Because Archuleta failed to show that the Agency's reason for terminating her was a pretext for discrimination or retaliation, the EEOC dismissed her complaint.
 
 II
 
 6
 Archuleta filed a complaint in the United States District Court for the District of Columbia seeking review of the order of the MSPB, and alleging again that her termination was discriminatory or retaliatory. She claimed that Salas was biased against her because of her age and sex. She claimed that he treated her unfairly because she was Hispanic, and because he, a Hispanic male, did not want other Hispanics to succeed. She claimed that she was handicapped due to her injuries, and that Salas gave her duties which would aggravate her injuries so she could not do her job. Finally, she contended that her discharge was in retaliation for contacting the Agency's EEO office, and that her work was satisfactory. She sought reinstatement, back pay, punitive damages, and costs and attorney's fees.
 
 
 7
 The defendant denied Archuleta's allegations of discrimination and retaliation; the defendant also asserted that venue was not proper in the District of Columbia and moved for a change of venue to the District of Maryland, the district in which the alleged discriminatory conduct occurred. The district court granted the motion for change of venue, and the case was transferred to the District of Maryland.
 
 
 8
 After transfer, the district court granted the defendant's motion for summary judgment. The court held first that jurisdiction was proper in that Archuleta's discrimination claim was a mixed question of fact and law, so that the MSPB's action was properly reviewed in the district court rather than in the Court of Appeals for the Federal Circuit. The court went on to find that the Board's determination was correct because of the substantial evidence supporting the Agency's determination that Archuleta's performance was not satisfactory and the complete lack of evidence that the Agency's action was pretextual. Archuleta moved for reconsideration, but the motion was denied. Archuleta then noted a timely appeal.
 
 III
 A. Standard of review
 
 9
 The first issue on appeal concerns the standard of review applicable to Archuleta's nondiscrimination claims. This Court held in Johnson v. Burnley, 887 F.2d 471, 474 n. 1 (4th Cir.1989),[2] that the district court has jurisdiction under 5 U.S.C. § 7703(b) to review orders of the MSPB; discrimination claims are reviewed de novo, while other claims are reviewed on the basis of the MSPB record. See also Rana v. United States, 812 F.2d 887, 888-89 n. 1 (4th Cir.1987). Archuleta contends on appeal that the district court should have conducted de novo review on all of her claims; however, she does not cite any authority for this proposition, and all other cases on point hold to the contrary. See Barnes v. Small, 840 F.2d 972, 975 s1.C.Cir.1988); Romain v. Shear, 799 F.2d 1416, 1421 (9th Cir.1986), cert. denied, 481 U.S. 1050 (1987); Tolliver v. Deniro, 790 F.2d 1394 (9th Cir.1986); Romero v. Department of the Army, 708 F.2d 1561 (10th Cir.1983); Hayes v. United States Gov't Printing Office, 684 F.2d 137 (D.C.Cir.1982).
 
 
 10
 Archuleta argues exhaustively that all of this case law is incorrect, and that both her discrimination and nondiscrimination claims should be reviewed de novo. She bases this argument on a contention that the statute provides that all review of MSPB decisions is to be conducted by the Court of Appeals for the Federal Circuit except for findings of discrimination, which may be reviewed de novo in a district court. 5 U.S.C. §§ 7703(b),(c). She claims that the statute does not specify that only facts relating to discrimination may be reviewed de novo, so that all facts (including the propriety of the agency's actions) should be reviewed de novo. However, as noted above, all of the courts addressing this issue, including this Court, have held to the contrary. Further, Archuleta is unable to show how the result would be different if all aspects of the agency's action were to be reviewed de novo. The district court did not err in applying the standard of review set forth in the precedent adopted by this and other Courts.
 
 B. Venue
 
 11
 The next issue on appeal is whether the proper venue was Maryland or the District of Columbia. The case was transferred to Maryland because, under Title VII, venue is determined by the place of the allegedly discriminatory conduct, the place of employment, and the place where records are kept; in this case, the conduct, employment, and records were all in Maryland.[3] Archuleta argues that the proper venue for her Title VII action was the District of Columbia. She relies heavily on the use of the word "defendant" in 42 U.S.C. § 2000e16(c), as contrasted with the word "respondent" in 42 U.S.C. § 2000e5(f)(3). She claims that because her action was brought under § 2000e-16(c) against the Secretary of the Agency as "defendant," the venue requirements of § 2000e-5(f)(3) should not apply, as that venue provision refers to "defendant[s]." Instead, she claims that she should have been able to bring the action in the District of Columbia under 28 U.S.C. § 1391 because the head of the agency was in the District of Columbia.
 
 
 12
 Archuleta's argument, although creative, has no merit. The proper venue for this suit was fixed by Section 2000e-5(3), which expressly provides that suit thereunder shall be filed in the venue where the alleged wrong occurred. In this case, the alleged wrong occurred in the District of Maryland, and venue should have been in that district. When the action was improperly filed in the District of Columbia, the District of Columbia Court had discretion to dismiss the action or to transfer it to the appropriate district. 28 U.S.C. § 1406(a). The District of Columbia chose to transfer, and that decision was appealable for abuse of discretion, but only to the District of Columbia Court of Appeals. The appellant failed to exercise that right of appeal, but seeks to appeal that decision after loss on the merits in the transferee district in this appeal. We have no jurisdiction to entertain such appeal from an order of the District Court of the District of Columbia. See Preston Corp. v. Raese, 335 F.2d 827 (4th Cir.1964); Linnell v. Sloan, 636 F.2d 65 (4th Cir.1980).
 
 C. MSPB proceedings
 
 13
 Archuleta next claims that AJ Clancy failed to make findings of fact to support his decision in the initial MSPB determination as required by 5 C.F.R. § 1201.111. That section provides, in pertinent part, that the initial decision by the AJ must contain "[f]indings of fact and conclusions of law upon all the material issues of fact and law presented on the record." 5 U.S.C. § 1201.111(b)(1). The decision of AJ Clancy did not contain a specific "Findings of Fact" heading,[4] nor did it contain a numbered listing of facts. However, the decision clearly contained findings of fact on the issues raised by the parties and presented at the hearing. Although the findings of fact were combined with the conclusions of law in the opinion, there is no requirement that these two sections be set out separately. Archuleta contends that AJ Clancy's recitation of the facts as he found them were merely legal conclusions; however, this is not the case. The AJ need not recount all of the testimony presented and his reasons for choosing to credit the testimony of particular witnesses in determining the facts. His view of the facts established at the hearing is all that is necessary to comply with 5 C.F.R. § 1201.111(b)(1). Therefore, this challenge is baseless.
 
 D. Protected class
 
 14
 The heart of the case is, of course, whether the district court correctly granted the defendant's motion for summary judgment, finding that Archuleta's termination was not based upon discrimination or retaliation. In order to prove a prima facie case of discrimination based upon her age, sex, or national origin,[5] the plaintiff must prove:
 
 
 15
 (1) that she is a member of a protected class;
 
 
 16
 (2) that she was qualified for her job and her job performance was satisfactory;
 
 
 17
 (3) that, in spite of her qualifications and performance, she was fired; and
 
 
 18
 (4) that the position remained open to similarly qualified applicants after her dismissal.
 
 
 19
 Williams v. Cerberonics, Inc., 871 F.2d 452, 455 (4th Cir.1989), citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). If the plaintiff can prove a prima facie case of discrimination, the defendant then has the opportunity to show that the plaintiff was discharged for a legitimate, non-discriminatory reason. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The burden then shifts back to the plaintiff to show that the reason cited by the defendant was a mere pretext for discrimination. Id.
 
 
 20
 Archuleta was a member of a protected class by virtue of her sex, age, and national origin, and she was terminated. However, she did not present sufficient evidence to show that she was qualified to continue to hold her position. Even if Archuleta presented a prima facie case of discrimination, the defendant submitted clear evidence in the form of written and oral warnings, performance evaluations, samples of inaccurate work product, and affidavits supporting the contention that Archuleta did not perform her work in a satisfactory manner.
 
 
 21
 Archuleta attempted to counter the defendant's evidence with an affidavit in which she claimed that her performance did not deteriorate from 1983 to 1984. She also asserted that she was frequently interrupted by one or more new employees during the reasonable opportunity period, and that she had to take three and a half sick days during that period, so she was unable to do the typing and filing expected of her. She did not, however, submit any evidence to show that she did the filing which was the basis for the agency's final decision to terminate her, nor did she contend that she did that filing. She submitted no evidence to show that the Agency's reason for terminating her was a pretext for discrimination. She did not present any material question of fact regarding her deficient job performance or her conclusory allegation of discrimination based upon age, sex, or national origin. In short, Archuleta was fired because she did not do her job rather than for any discriminatory reason, and the district court correctly granted summary judgment on that basis. See Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985) (summary judgment is proper in the Title VII context when plaintiff's claim rests solely on unsupported allegations of discrimination).
 
 E. Handicap
 
 22
 Archuleta also asserted that she was handicapped due to her injuries, and that Salas failed to reasonably accommodate her handicap as required by 29 C.F.R. § 1613.704(a). As a result, she claimed, she could not perform her job duties in a satisfactory manner. The district court did not address this issue.
 
 
 23
 A qualified handicapped person is one who "with or without reasonable accommodation, can perform the essential functions of the position in question." 29 C.F.R. § 1613.702(f). Accepting for the moment that Archuleta was handicapped within the meaning of the Rehabilitation Act of 1973, and that her handicap was not accommodated, she failed to point out in her complaint before the district court, or indeed throughout the entire proceeding, any facet of her job which she was unable to perform because of her injuries. Indeed, she presented the Agency with documentation from her physician that she could perform all of the duties of her position, with the restriction that she could not stand for more than 30 minutes at a time. The agency accommodated this restriction, and the deficiencies for which she was terminated were not related to the restriction. There is no basis for finding that she would have been able to perform her job functions if the Agency made some additional accommodation for her alleged handicap. Consequently, this claim is also devoid of merit.
 
 F. Retaliation
 
 24
 Archuleta claimed that her dismissal was due in part to retaliation for filing a grievance with the Agency's EEO office regarding the denial of a within-grade increase. In order to establish a prima facie case of reprisal, the plaintiff must show that she engaged in a protected activity, that she was terminated, and that her termination was causally related to the exercise of the protected activity. Ross, 759 F.2d at 365. Her entire allegation before the district court in this regard was:
 
 
 25
 Plaintiff had previously contacted an EEO Counselor and subsequent to that time, [defendant] took improper personnel actions against her. Plaintiff contends that such actions were in reprisal for her contacting the EEO Counselor, that her performance was satisfactory, and thus, this was used as an improper reason for denying the within-grade increase and for her removal.
 
 
 26
 This allegation is purely conclusory; it does not even specify the date or circumstances of Archuleta's contact with the EEO counselor.[6] The only possible support for a finding that Archuleta's termination was causally related to her EEO complaint was the fact that Salas and Sherbert knew about the EEO complaint at the time of her termination. See Williams, 871 F.2d at 457. Assuming that this was sufficient to establish a prima facie case of retaliatory discharge, there was ample evidence that Archuleta was fired due to her performance rather than in retaliation for filing a complaint. In effect, the die was cast at the close of the reasonable opportunity period, prior to the time Archuleta filed the EEO grievance, so this claim is also meritless.
 
 G. Reasonable opportunity period
 
 27
 Finally, regarding the nondiscrimination claims, Archuleta contends that the five-week reasonable opportunity period was too short a period for her to prove that her work was sufficient. She also contends that her work was interrupted during the reasonable opportunity period by an extraordinary number of questions by new employees. These claims are reviewed on the basis of the MSPB record. Rana, 812 F.2d at 888-89 n. 1. That record, and particularly the transcript of the hearing before AJ Clancy, reflects that the filing required of Archuleta in order to prevent her termination would have required at most a few hours of work. Further, Salas testified in the hearing that Archuleta never complained to him about interruptions or any other impediment to her ability to complete her tasks; she simply did not do the work. It is impossible to say on the face of the MSPB record that the Board's decision on these nondiscrimination claims was incorrect.
 
 
 28
 We affirm the district court's grant of summary judgment in favor of the defendant.
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 Archuleta also claimed that she was improperly terminated or denied a within-grade salary increase due to improper findings that she was absent without leave. However, she was denied an increase and terminated for poor work performance, and not due to absences, excused or unexcused
 
 
 [2]
 The Court deferred a motion for rehearing en banc pending the Supreme Court's decision in Irwin v. Veterans Administration, 59 U.S.L.W. 4021 (U.S. 1990), on a different issue, but later affirmed en banc, recalling the grant of rehearing and leaving the panel's decision intact
 
 
 [3]
 To the extent that Archuleta claims discrimination based upon a handicap, the Title VII venue provision also applies to actions brought under the Rehabilitation Act of 1973. 29 U.S.C. § 794a(a)(1)
 
 
 [4]
 The bulk of the opinion was styled "Analysis and Findings."
 
 
 [5]
 The sex and national origin claims are governed by Title VII, 42 U.S.C. § 2000e-2(a)(1), while the age discrimination claim is covered by the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1). However, as the relevant ADEA provisions are patterned after Title VII, Title VII analysis applies to each of these claims. See Romain, 799 F.2d at 1418
 
 
 [6]
 The complaint does not give any details about the EEO complaint. However, according to the record before the MSPB, Archuleta filed a grievance regarding the denial of the within-grade increase after the reasonable opportunity period had expired. Sherbert testified before the MSPB that he concurred in the termination decision for the same reasons that he agreed to the denial of the within-grade increase, namely Archuleta's unsatisfactory work performance, particularly her filing deficiencies